[Crim. No. 2461. In Bank.—October 9, 1922.]

In the Matter of the Application of T. H. PEPPERS for a Writ of Habeas Corpus.

[1] CALIFORNIA FRUIT AND VEGETABLE STANDARDIZATION ACT—SHIPMENT OF FROSTED ORANGES—VOID PROVISION.—The provision of section 10 of the California Fruit and Vegetable Standardization Act (Stats. 1921, p. 1234) declaring that oranges shall be considered unfit for shipment when frosted to the extent of endangering the reputation of the citrus industry if shipped is too vague, indefinite and uncertain to furnish the basis of a criminal prosecution.

[2] ID. — POWER OF DIRECTOR OF AGRICULTURE — UNLAWFUL DELEGATION OF LEGISLATIVE AUTHORITY.—Conceding, but not deciding, that the provisions of sections 4, 15 and 16 of the California Fruit and Vegetable Standardization Act embody a legislative attempt to confer upon the department of agriculture the power to make more certain the clause of the act declaring that oranges shall be unfit for shipment when frosted to the extent of endangering the reputation of the citrus industry if shipped, the legislature had no power to thus delegate to an administrative board or officer its exclusive power and function of determining what acts or omissions on the part of an individual are unlawful.

APPLICATION for a Writ of Habeas Corpus. Granted.

The facts are stated in the opinion of the court.

Leonard, Surr & Hellyer for Petitioner.

U. S. Webb, Attorney-General, John W. Maltmann, Deputy Attorney-General, Thos. Lee Woolwine, Charles R. Thomas and Tracy Chatfield Becker for Respondent.

RICHARDS, J., *pro tem.*—Application for writ of *habeas corpus.* The applicant was charged by a complaint in the justice's court of Los Angeles township, county of Los Angeles, with the violation of the provisions of an act of the legislature approved June 3, 1921, known as "The California Fruit and Vegetable Standardization Act." (Stats. 1921, p. 1234.) The complaint was in three counts, by the first of which the applicant was charged with a misdemeanor in having offered for shipment to a common carrier at Downey, within said county, three boxes of oranges which had not been inspected or passed upon by the county horticultural commissioner of said county or any of his deputies, as is required by the rules and regulations established by the director of the state department of agriculture, respecting shipments of oranges, then in full force and effect. By the second count in said complaint the applicant herein was charged with having committed a misdemeanor consisting in having willfully and unlawfully packed, shipped and offered for shipment at Downey, in said county, three boxes of oranges, which oranges were not virtually free from serious defect in this, that the contents of said boxes of oranges contained fifteen per cent or more of oranges showing marked evidence of frost injury, to wit, drying in twenty per cent or more of the exposed pulp as shown on a transverse through the center, and having a water-soaked appearance showing on two or more segments, and having the presence of crystals and crystalline deposits on two or more segments as defined in and provided by the rules and regulations established by the director of the state department of agriculture respecting shipments of oranges, then in full force and effect. By the third count in said complaint it was charged that the applicant herein had committed a misdemeanor by having willfully and unlawfully packed, shipped and delivered for shipment to a common carrier at Downey, in said county, three boxes of oranges which were "unfit for shipment in this, that said oranges were frosted to the extent of endangering the reputation of the citrus industry, if shipped."

It is the contention of the applicant herein that as to the first count in said complaint the prosecution cannot be maintained for the reason that while the act of 1921 empowered the director of agriculture of the state of California "to define, promulgate and enforce such rules and regulations as may be deemed necessary to carry out the provisions of this act," there was not enacted any provision declaring that a violation of such rules and regulations should be a crime, and, hence, that the applicant could not be successfully prosecuted for a violation of such rules and regulations under the authority of *In re Potter*, 164 Cal. 735 [130 Pac. 721]. The respondent concedes the force of said contention under said authority, but still insists that the said rules and regulations of the state director of agriculture may be read, construed and held effective in definition and aid of the provision of the statute claimed to have been violated in the other two counts of said complaint. Whether or not this would be true depends upon whether the provision of the statute claimed to have been violated by the other two counts of the complaint is not of itself too vague, indefinite and uncertain to either furnish, standing alone, the basis for a criminal prosecution, or to be susceptible of being aided by the rules and regulations of the department of agriculture. If it is found to be so, the other two counts in said complaint must also fail. In this view of the case the questions raised upon this application involve the interpretation to be given to the provisions of the act in relation to the shipment of oranges, claimed to be defective through having been frosted; and involve also the scope of the powers and functions of the state director of agriculture, with special reference to the shipment of oranges in alleged violation of these provisions of said act.

The California Fruit and Vegetable Standardization Act is declared in its title to be "an act to promulgate the development of the California fruit, nut and vegetable industry in state and interstate markets, and to protect the state's reputation in these markets by establishing standards and standard packages for certain fruits, nuts and vegetables specified therein, and to prevent deception in the packing and sale of fruit, nuts and vegetables; to provide for the certification of fruits and vegetables including the payment of fees; to prescribe penalties for the violation of the pro-

visions hereof,'' etc.    (Stats. 1921, c. 719, p. 1234.)    By section 4 of said act "the Director of Agriculture is hereby empowered . . . to enforce all of the provisions of this act."    By section 15 of said act "the Director of Agriculture is empowered to define, promulgate and enforce all such rules and regulations as may be deemed necessary to carry out the provisions of this act''; the provisions of said act having particular reference to oranges are embraced in that portion of section 10 thereof which reads as follows:

"Oranges shall be deemed properly matured for shipment or sale under the provisions of this act when the juice contains soluble solids equal to or in excess of eight parts to every part of acid contained in the juice, the acidity of the juice to be calculated as citric acid without water of crystallization; *provided,* that the oranges have attained at least twenty-five per cent yellow or orange color before picking, and oranges which are substantially or at least seventy-five per cent colored at the time of picking shall be deemed properly matured for shipment or sale, irrespective of analysis of the juice.    When packed, shipped, delivered for shipment, offered for sale or sold, oranges shall be virtually free from insect and fungous diseases and other serious defects. Oranges shall be considered unfit for shipment when frosted to the extent of endangering the reputation of the citrus industry, if shipped.    The foregoing provisions shall not apply to shipments of oranges to foreign countries other than the Dominion of Canada, during any season, provided such shipments are made after the first day of November."

[1]    The particular portion of the foregoing provisions of said act brought in question by the applicant's attack upon the two remaining counts in said complaint is the provision therein that "oranges shall be considered unfit for shipment when frosted to the extent of endangering the reputation of the citrus industry, if shipped."    It is the applicant's contention that the above-quoted clause in said act is too vague, indefinite and uncertain, standing alone, to furnish the basis of a criminal prosecution such as is sought by the third count of said complaint; and that it is also too vague, indefinite and uncertain to furnish the basis for such a definition thereof by the department of agriculture as is alleged in, and attempted to be enforced by, the second count of said complaint.    We are of the opinion that both of these

contentions must be sustained. Considering the said clause in said act by itself and unaided by the attempted definition of the department of agriculture, it will be seen that it does not purport to forbid the shipment of all frosted oranges. It thus concedes that oranges may be frosted and may still be the proper subject of shipment and consumption without in any way "endangering the reputation of the citrus industry." What defect then shall render certain of such oranges unfit for shipment as "endangering the reputation of the citrus industry"? What is the reputation of the citrus industry? Is it for the production and shipment of oranges of a certain standard of color, or of sweetness, or of juiciness, or of palatability? How is the producer whose oranges have been touched with frost to know, from the terms of this act, whether or when he will be violating it in offering his fruit for shipment? By what standard is the complainant to reach the conclusion that the provisions of this clause of the act are being violated by one shipper and not by another? What limitation is therein placed upon the power of the magistrate or of the jury to arbitrarily determine that one shipper of frosted oranges has violated the statute, and that another, shipping precisely the same quality of oranges, has not? The vice of this sort of legislation is quite aptly pointed out in the case of *United States* v. *Reeve,* 92 U. S. 214 [23 L. Ed. 563, see, also, Rose's U. S. Notes], in which the court says: "If the legislature undertakes to define a new offense and provide for its punishment, it should express its will in language that need not deceive the common mind: Every man should be able to know with certainty when he is committing a crime. . . . It would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders and leave it to the courts to step inside and see who could be rightfully detained and who should be set at large." In the case of *Louisville etc. Railroad Co.* v. *Commonwealth,* 99 Ky. 132 [59 Am. St. Rep. 457, 33 L. R. A. 209, 35 S. W. 129], wherein the court was considering the validity of an act providing that a railroad company should not charge more than a reasonable or just rate of fare for the transportation of passengers, the court, in holding the act void for uncertainty, said: "There is no standard whatever fixed by the statute, or attempted to be fixed, by which the carrier may regulate his conduct; and it seems

clear to us to be entirely repugnant to our system of laws to punish a person for an act the criminality of which depends not upon any standard erected by the law which may be known in advance but on one erected by a jury, and especially so as that standard must be as variable and uncertain as the views of different juries may suggest and as to which nothing can be known until after the commission of the crime." In the case of *Hewitt* v. *Board of Medical Examiners,* 148 Cal. 590 [113 Am. St. Rep. 315, 7 Ann. Cas. 750, 3 L. R. A. (N. S.) 896, 84 Pac. 39], in which the question of the validity of a statute empowering the board of medical examiners to revoke the certificate of a physician for unprofessional conduct and which defined unprofessional conduct in part to consist in "all advertising of medical business in which grossly improbable statements are made," this court said:

"The right which a person possesses under the constitution and the laws to practice his profession as a physician and surgeon cannot be made to depend upon a provision of a statute as vague, uncertain, and indefinite as is the provision we have been considering. If a physician's license is to be revoked for 'grossly improbable statements'; if he is to be thereby deprived of his means of livelihood, of his right to practice a profession which it has taken him years of study and a large expenditure of money to qualify himself for, on the ground that he has made 'grossly improbable statements' in advertising his medical business—it is requisite that the statute authorizing such revocation define what shall constitute such statements so that the physician may know in advance the penalty he incurs in making them. It is an easy matter for the legislature to declare what statements in the advertisement of medical business shall be deemed 'grossly improbable,' and it must do so, and not leave it to a board of medical examiners after the publication is made to determine in its judgment whether the statements were or were not 'grossly improbable,' and according to its particular view of the matter revoke or refuse to revoke the license. The right to practice medicine cannot be made to depend upon such a vague, uncertain, and indefinite provision."

Many other cases might be cited dealing with the essential infirmity of this sort of legislation, but we think these will

suffice to show that the clause of this act under consideration is entirely too vague, indefinite and uncertain to form the basis of a criminal proceeding. This disposes of the third count of the complaint assailed in this proceeding. The second count thereof is sought to be upheld by the respondent herein upon the ground that the legislature has lawfully transferred to the department of agriculture, acting through its executive officer, the director of agriculture, the power to define the meaning of said act as to the clause in question so as to render enforceable its terms. The provisions of the act relied upon as sustaining this contention are section 4 thereof, which reads: "The Director of Agriculture is hereby empowered . . . to enforce all of the provisions of this act"; section 15 thereof, which provides that "The Director of Agriculture is empowered to define, promulgate and enforce all such rules and regulations as may be deemed necessary to carry out the provisions of this act," and section 16 thereof, which provides that "The Director of Agriculture and his duly authorized agents or employees may investigate and certify to shippers and other interested parties the quality and condition of fruit, vegetables and other farm products under such rules and regulations as he may prescribe." [2] Conceding for the sake of argument, but not deciding, that the foregoing provisions of said act do embody a legislative attempt to confer upon the department of agriculture the power to make more certain the clause of said act declaring that "oranges shall be unfit for shipment when frosted to the extent of endangering the reputation of the citrus industry, if shipped," it is our conclusion that the legislature had no power to thus delegate to an administrative board or officer its exclusive power and function of determining what acts or omissions on the part of an individual are unlawful. (*People* v. *Parks,* 58 Cal. 624; *Ex parte Cox,* 63 Cal. 21; *Board of Harbor Commissioners* v. *Redwood Co.,* 88 Cal. 491 [22 Am. St. Rep. 321, 26 Pac. 375]; *Hewitt* v. *Board of Medical Examiners, supra.*) There is nothing said in *Ex Parte Daniels,* 183 Cal. 636 [192 Pac. 442], which conflicts with these views if, as we have held, the language of the act declaring that "oranges shall be considered unfit for shipment when frosted to the extent of endangering the citrus industry, if shipped," is too vague, indefinite and uncertain to form the basis of a crim-

inal action, it follows that the act in question has not defined what shall constitute such a defect in frosted oranges as would render their shipment unlawful; not having done so, it is clear that any attempt on the part of an administrative board or officer so to do would be an act of legislation, and, as such, beyond the constitutional powers of such board or officer.

The application is granted, and the petitioner discharged.

Wilbur, acting C. J., Waste, J., Lennon, J., and Lawlor, J., concurred.