SHAW, P. J.
In each of these cases the defendant has been convicted of violating section 41.27, subdivision (b), of the Los Angeles Municipal Code, and appeals from the judgment. This code, adopted as an ordinance, appears to be a compilation of previously existing penal ordinances of the city of Los Angeles. Section 41.27 deals with the subject of intoxication, and subdivision (b) thereof reads as follows: “No person shall be on any private premises or in any private house in a state .of drunkenness or intoxication to the annoyance of any other person. ’ ’
This ordinance is attacked as unreasonable, oppressive and uncertain, and for all these reasons void. As to uncertainty, it is argued that annoyance is a state of mind, that what annoys one person may not annoy another, and that consequently the ordinance sets up no standard by which it may be determined whether any particular conduct is in violation thereof, citing In re Peppers, (1922) 189 Cal. 682 [209 Pac. 896], But ordinances, like other acts of legislation, are to be reasonably construed. (Civ. Code, sec. 3542; 23 Cal. Jur. 722, 723; Kipp v. Billingham, (1933) 217 Cal. 527, 530 [20 Pac. (2d) 318].) They are also, so far as possible, to be given a construction which will render them valid rather than void. (Medical Finance Assn. v. Wood, (1936) 20 Cal. App. (Supp.) 749 [63 Pac. (2d) 1219].) While annoyance is, partly at least, a mental condition, we think *Supp. 757 this ordinance does not intend the existence of an annoyance to be ascertained solely by an inquiry into the actual state of mind of some other person present to witness the defendant’s intoxication. No doubt there must be such a person present; otherwise the defendant’s intoxication would not be to the annoyance of another person. We say this because the theory of telepathy is not well enough established to be the basis of legislation; nor is it to be supposed that the city council which passed this ordinance was postulating a venture into the realm of transcendental cognition or other means of acquiring knowledge in absentia or ex post facto, by the person annoyed. But the matter of annoyance is to be settled in accordance with the mental reaction of a reasonable person. Unless the defendant’s condition of intoxication and resulting conduct are such as to annoy a reasonable person and another person present is in fact annoj^ed thereby, no violation of the ordinance appears. We find the proper criterion set up in the English case of Tod-Heatly v. Benham, (1887) 40 Ch. Div. 80, 94. That case involved á covenant of a lease that the lessee would not do on the leased premises anything which might “grow to the annoyance, nuisance, grievance, or damage” of the lessor or the inhabitants of adjoining houses. Construing this part of the lease, Lord Justice Cotton said: “They [the judges] must decide not upon what their own individual thoughts are, but on what, in their opinion and upon the evidence before them, would be an annoyance or grievance to reasonable, sensible people; ... It is not sufficient in order to bring the case within the words of the covenant, for the plaintiffs tq show that a particular man objects to what is done, but we must be satisfied by argument and by evidence, that reasonable people, having regard to the ordinary use of a house for pleasurable enjoyment, would be annoyed or aggrieved by what is being done.” Lord Justice Lindley said (at page 96), “Anything which raises an objection in the minds of reasonable men may be an annoyance within the meaning of the covenant. . . . more than some fanciful distaste, which would not be sufficient.” Similar language was used by Lord Justice Bowen, the other member of the court.
Thus construed the ordinance is not within the rule of the Peppers case, supra, relied on by appellant. There a statute prohibiting the shipment of oranges “when frosted to the extent of endangering the reputation of the citrus in *Supp. 758 dustry, if shipped” was condemned as setting up no standard by which a shipper could regulate his conduct and hence “too vague, indefinite and uncertain to form the basis of a criminal proceeding”. But that statute is quite different from this ordinance as we construe it. The qualities or characteristics to which reputation should relate were not stated by the statute there in question, but were left to conjecture. Moreover, the reputation of the citrus industry would depend on the opinion of all sorts of persons, and might probably be affected or created in part by the unreasonable whims or fantasies of the moment which no one could anticipate. Plere, however, upon the construction we have given the ordinance we have a standard of reason established. The ordinance is like the statute upheld in Ex parte Daniels, (1920) 183 Cal. 636, 646 [192 Pac. 442, 21 A. L. R 1172], where it was held that a law prohibiting the driving of automobiles at an unreasonable speed was valid and constitutional, against the objection that it was too uncertain. The Daniels case was cited with approval in In re Leach, (1932) 215 Cal. 536, 544 [12 Pac. (2d) 3], where it was held that the words “not offered to the public” used in excepting certain matters from the Corporate Securities Act did not make the penal provisions of that act fatally uncertain. See, also, People v. Yates, (1931) 114 Cal. App. (Supp.) 782, 789 [298 Pac. 961], where this court held a penal statute requiring a father to furnish his child “necessary food”, etc., was sufficiently certain, citing the Daniels case. Further authority for sustaining this ordinance is found in People v. Associated Oil Co., (1930) 211 Cal. 93, 108 [294 Pac. 717], where a statute not penal, but enforceable by injunction, which prohibited “unreasonable waste of natural gas” by the operator of an oil well, was upheld against attack on the ground that it was too uncertain to provide any standard of conduct, the court saying: “the standard of reason has been applied in many cases where certainty is less capable of measurement than in the present case, . . . Instances ‘where a man’s fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree’, are common.” The attack on this ordinance as unreasonable and oppressive is largely based on the interpretation of the ordinance which we have rejected, that which would allow an annoyance to arise from the whim or fancy of some possibly unreasonable person. Upon our construction of the ordinance *Supp. 759 it is not an arbitrary or unreasonable restriction of personal liberty but is a valid exercise of the police power. See In re Cutler, (1934) 1 Cal. App. (2d) 273, 280 [36 Pac. (2d) 441], also, City of St. Joseph v. Harris, (1894) 59 Mo. App. 122, 127, where an ordinance like this one was declared valid by reason of the inclusion in it of the “annoyance” clause, the court stating that drunkenness per se could not be prohibited.
In the case of People v. Beifuss, now before us, the defendant pleaded guilty, so no question arises as to the nature of the conduct necessary to constitute a violation of the ordinance. In People v. Johnson there was evidence tending to show that the defendant was very drunk, and that while in that condition she was in a rooming house, talked thickly but in a loud and boisterous manner, cursed, used profane and obscene language, struck matches on the woodwork and threw them on the carpet, all of which was in the presence of the landlady and her tenants. The landlady testified that this conduct disturbed her very much. The trial court was fully justified in finding that this conduct would annoy a reasonable person and did annoy the landlady as well as the other persons present.
Other points made in these cases have -been considered but afford no ground for reversal and do not require further discussion.
The judgment in each of the above-entitled cases is affirmed.
Schauer, J., concurred.