[Civ. No. 12655. Second Dist., Div. One. Nov. 4, 1941.]

HARRY SMULSON, Appellant, v. THE BOARD OF DENTAL EXAMINERS OF THE STATE OF CALIFORNIA et al., Respondents.

Robert F. Shippee for Appellant.

Harry E. Lindersmith for Respondents.

SHAW, J. *pro tem.*—Proceedings were taken against petitioner, a licensed dentist, before the State Board of Dental Examiners, on charges that he had been guilty of unprofessional conduct. After a hearing, the board found the charges to be true and suspended his license to practice dentistry for a period of two years. He then filed in the superior court a petition for a writ of mandate to compel the board to vacate its suspension of his license. The superior court gave judgment against him, from which he appeals.

On appeal he makes three contentions: that the statute under which the proceedings against him were taken is void; that the accusation filed against him with the board was insufficient; and that there was no evidence before the board to support their finding.

Section 1670 of the Business and Professions Code provides that, "Any dentist may have his license revoked or suspended by the board for unprofessional conduct . . . " and section 1680 of the same code sets forth a definition of the term "unprofessional conduct," as it concerns dentists, in seventeen subdivisions. The accusation against petitioner contained two separate charges, based on different parts of this statutory definition. The board found him guilty on both charges, but the separate suspensions ordered run for the same length of time and are concurrent. Hence our conclu-

sion stated below that the action of the board on one charge must be upheld renders it unnecessary to consider the other.

One of the charges against petitioner was based on subdivision (11) of section 1680 of the Business & Professions Code, which includes in the definition of unprofessional conduct ''The making use of any advertising statements of a character tending to deceive or mislead the public.'' It is contended that this provision is too vague and uncertain to enable a dentist to know what is forbidden, citing *Hewitt* v. *Board of Medical Examiners* (1906), 148 Cal. 590 [84 Pac. 39, 113 Am. St. Rep. 315, 7 Ann. Cas. 750, 3 L. R. A. (N. S.) 896], and *In re Peppers* (1922), 189 Cal. 682 [209 Pac. 896], in each of which a statute was held void for uncertainty. But neither of the statutes involved in those cases was at all like that here in question. Here the effective words of description are: ''tending to deceive or mislead the public.'' These words are well known and understood in both popular and legal language. This description of the forbidden practices is no more uncertain than many other statutory provisions which have been held to be valid exercises of legislative power. It is not required that even a penal statute, to be valid, have that degree of exactness which inheres in a mathematical theorem. '' . . . the law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree.'' (*Nash* v. *United States* (1913), 229 U. S. 373, 377 [33 Sup. Ct. 780, 57 L. Ed. 1232, 1235].) This quoted statement was approved and followed in *People* v. *Associated Oil Co.* (1930), 211 Cal. 93, 108 [294 Pac. 717], where the phrase ''unreasonable waste of natural gas'' was held sufficiently certain for use in a prohibitory statute, and in *Pacific Coast Dairy* v. *Police Court* (1932), 214 Cal. 668, 677 [8 Pac. (2d) 140, 80 A. L. R. 1217], where the words ''diligent effort to find the owner thereof and to restore or return the same'' in a penal statute were upheld against the attack that they were too uncertain. For other instances of statutes held valid against the claim of fatal uncertainty, see *People* v. *Beifuss* (1937), 22 Cal. App. (2d) (Supp.) 755 [67 Pac. (2d) 411]; *People* v. *Smith* (1939), 36 Cal. App. (2d) (Supp.) 748 [92 Pac. (2d) 1039]; and *People* v. *Banat* (1940), 39 Cal. App. (2d) (Supp.) 765 [100 Pac. (2d) 374], and cases therein cited.

A case very much like this is *Glass* v. *Board of Medical Examiners* (1920), 50 Cal. App. 389 [195 Pac. 73], which upheld a provision of the Medical Practice Act defining unprofessional conduct for which a license could be revoked as including "All advertising of medical business which is intended or has a tendency to deceive the public or impose upon credulous or ignorant persons, and so be harmful or injurious to public morals or safety." The court in that case cited and distinguished *Hewitt* v. *Board of Medical Examiners, supra,* and said, "It would not be possible to frame a definition of unprofessional advertising which would anticipate in terms every form of advertisement which unscrupulous practitioners might thereafter devise. This being so, it cannot reasonably be held necessary to the validity of the statute that it go further than to state a reasonably definite rule under which all such specific acts might be included. This we think has been done in the terms of the statute so far as the same are now presented for consideration." (*Glass* v. *Board of Medical Examiners, supra,* page 392.)

The same effective words regarding a tendency to deceive the public appear here as in the Glass case, and they are the essential part of the definition in each case. ▮ We find here the additional word "mislead." It does not always imply an intent to deceive (*People* v. *Wahl* (1940), 39 Cal. App. (2d) (Supp.) 771, 773 [100 Pac. (2d) 550], but it does not for that reason lack certainty. Neither does it render the statute invalid on other grounds. While the purpose of the provision is to prevent deception and imposition, its application may properly be extended to cover the occasional case, if there be such, where the misleading is done without any specific intent to do so. (See *Semler* v. *Oregon State Board of Dental Examiners* (1935), 294 U. S. 608, 613 [55 Sup. Ct. 570, 79 L. Ed. 1086, 1090].)

▮ The charge against petitioner alleged that he "knowingly and intentionally caused to be printed, circulated and distributed to the general public . . . a certain hand bill . . . wherein and whereby the said Harry Smulson did advertise as a dentist and did make use of advertising statements of a character tending to deceive or mislead the public, a photostatic copy of which advertisement is hereto attached." It has been held in regard to proceedings before a licensing board for revocation or suspension of a professional license on

account of unprofessional conduct that the accusation or complaint is sufficient if expressed in the language of the statute. (*Winning* v. *Board of Dental Examiners* (1931), 114 Cal. App. 658, 664 [300 Pac. 866]; *Howson* v. *Board of Medical Examiners* (1932), 128 Cal. App. 35, 37 [16 Pac. (2d) 693]; *Gustason* v. *Board of Osteopathic Examiners* (1935), 10 Cal. App. (2d) 436, 438 [51 Pac. (2d) 1106].) This rule is subject to the qualification that the language of the statute must be sufficiently explicit to advise a person charged thereunder of the particular kind of unprofessional conduct which it is proposed to prove against him. (*Lanterman* v. *Anderson* (1918), 36 Cal. App. 472, 477 [172 Pac. 625]; *Dyment* v. *Board of Medical Examiners,* 57 Cal. App. 260, 265 [207 Pac. 409]; *Tapley* v. *Abbott* (1931), 111 Cal. App. 397, 399 [295 Pac. 911]; *Anderson* v. *Board of Medical Examiners* (1931), 117 Cal. App. 113, 115 [3 Pac. (2d) 344]; *Bley* v. *Board of Dental Examiners* (1932), 120 Cal. App. 426, 431 [7 Pac. (2d) 1053].) Here the language of the statute used in the accusation would of itself be sufficient to comply with the rule, as so qualified, but the accusation goes further and sets forth a copy of the advertisement used, and characterizes it in the statutory language. The sufficiency of this charge might be defeated if there were anything on the face of the attached advertisement which refuted the allegations of its character, but we find nothing of the kind.

At the hearing the advertisement attached to the accusation was placed in evidence, its circulation by petitioner as alleged being admitted. As is usual in such cases it is grossly and fulsomely laudatory of petitioner's mode of operations and of the quality of the work done by him. Referring to dental plates it says: "They are made after DR. SMULSON personally takes the impressions and makes a special study of your case. What I have done for thousands of other folks I am confident I can do for you." The making of impressions of the mouth is a part of the practice of dentistry, and can be done only by a licensed dentist. (*Jacobs* v. *Board of Dental Examiners* (1922), 189 Cal. 709, 714 [209 Pac. 1006].) The statement just quoted, read with the other matters commendatory of petitioner's work, conveys the idea that it is too important a part of the practice to be left to the "skilled work of only licensed dentists" in petitioner's office, which is elsewhere mentioned in the hand

bill, and so it is done by petitioner *personally*. The evidence of a witness who came to petitioner's office for plates in response to this hand bill showed that the impressions of her mouth were not taken by petitioner but by some dentist in his employ. This fact was not revealed to her at the time, but was discovered by her later, apparently without any help from petitioner or his staff. Petitioner himself testified that "There were times when I didn't take the impression." Obviously the declaration of the hand bill did not represent a uniform custom of his business, and tended to mislead the public in a matter which in the hand bill he tried to make them think was important.

Petitioner endeavors to escape from this conclusion by urging that the word "take" in the statement above quoted does not refer to the actual making of the impressions but means that after they are made petitioner "takes" them in his hands for the purpose of studying them. To anyone who has heard any discussion of such matters this is plainly a forced and unusual construction of the language used. Even if it be accepted as a possible construction, it remains true that the construction we have given the word "take" in this connection, as referring to the actual work of making the impressions, is also possible and much more in consonance with ordinary usage. ▮ The use of a word having a double meaning is a common device of those desiring to deceive or mislead others. One who does this cannot escape the charge of misleading or deceiving by saying that to him, or as he meant the words, they were true. (*Webster* v. *Board of Dental Examiners* (1941), 17 Cal. (2d) 534 [110 Pac. (2d) 992]; *People* v. *Wahl, supra*).

▮ The hand bill also contains these statements: "You can have your plates and make your first payment 30 days after they are completed by using my no money down easy payment plan"; "Don't Pay Me One Penny Until You Have Worn My Dental Plates for 30 Days." These are also misleading statements. They must be understood as referring to the agreed time for payment, not—as argued—to some time to which a patient might, by processes of evasion, defer payment. According to petitioner's testimony the easy payment plan referred to consisted in taking a note and selling it to a finance company, first submitting the application for credit to that company before doing the work, though in

some cases not so approved credit was extended. The date of first payment was put in the note when the patient made a definite appointment for the work and was fixed so as to be 30 days after the then estimated time for completion. In the case of the patient who testified, the time for her first payment arrived and she was sued before she got one of her plates fixed up so she could wear it. In defendant's actual practice he fixed the date of the first payment before he even began to work on the plates; at that time he could not know when he could complete the plates and place them in wearable condition, for sometimes many fittings with accompanying delay would be necessary for that purpose. But once the date of payment was fixed and the note transferred to a finance company it was out of his power to extend the time to conform to his statements in the hand bill.

Other parts of the hand bill are claimed to be misleading. It contains many statements undoubtedly intended to appeal to the credulous and attract them to defendant's office, but further mention of them appears unnecessary, for the two matters above discussed are sufficient to support the decision of the board.

The judgment is affirmed.

York, P. J., and White, J., concurred.