*Supp. 846
 
 SHAW, P. J.
 

 The charge against defendants is that they wilfully, and maliciously disturbed the peace and quiet of the complainant and other persons present by loud and unusual noise and by tumultuous and offensive conduct, in violation of section 415 of the Penal Code. It appears that the defendants are members and ordained ministers of a religious organization known as Jehovah’s Witnesses, and that they went to a hotel known as the Daily Hotel, in the city of Los Angeles, taking with them a supply of pamphlets and other printed matter in which the religious tenets and views of their organization were set forth, for the purpose of talking with the guests of-the hotel and distributing this printed matter to them: Their mode of operation was to go through the halls of the hotel, knocking on all the doors and if they had no answer placing a leaflet under the door, but if there was an answer getting the occupant of the room to the door, if possible, ' and then holding .conversation with such occupant and endeavoring to get him or her to accept some of the printed matter which the defendants carried.
 

 Defendants arrived at the hotel at about 9.30 a.m. on a Sunday morning. The hotel had three floors and they began on the second floor. After they had knocked at several doors the manager of the hotel attempted to get them to stop. The manager told them to leave, that there were many war workers' there and "people 'objected to being disturbed on their Sunday sleep and said, “Ton must leave because I can’t have you waking my people.” The defendants, who appear to have fortified themselves with information on various legal decisions in which their organization has been involved, said to this, “We have a right to knock on these doors and talk to people. ’ ’ Both the manager and the defendants did some loud talking on this subject. The manager then called police officers, who came and interviewed the manager, the hotel clerk, and defendants, listened to defendants’ legal arguments and went away, saying they had no grounds for arresting defendants, as no offense had been committed in the presence of the officers, but for the hotel people to keep the peace and use whatever force was necessary. The defendants then resumed their knocking on the doors of the hotel rooms, and after the defendant Scheerer had first knocked at and then entered the door of one room- the clerk, Aiken, forcibly pulled him out of it. This resulted in what was described by some wit
 
 *Supp. 847
 
 nesses as a commotion, with some loud talking. Defendant Vaughan then called the police again and when they arrived requested them to arrest Aiken for assaulting Scheerér. After some further discussion in the hotel lobby the officers took Aiken and the two defendants to the police station, without purporting to arrest any of them. Later Aiken swore to the complaint on which defendants have been convicted.
 

 Witnesses produced by the People described the conduct of defendants in going through the hotel and knocking at the doors, and its effect on them as follows. Witness Pletz was the occupant of a room jointly with one Siess, also a witness, and had just returned from a church service. v He and several others were engaged in a card game when defendant Scheefer "pounded” at the door, and when the.inmates said, "Who is there?” he came in. He offered them some literature which they refused, and at this time he was pulled from the room by Aiken, as above stated. After this there was "a good deal of loud talking, excessively loud” in the halls, but the witness did not say who did it. He said that, although his door was closed, he had heard pounding on the doors going on for about ten minutes before his door was reached, and that it was loud. The witness Siess gave testimony similar to that of Pletz. Both witnesses said they were disturbed by the pounding and the intrusion into their room.
 

 Miss Kindred, a roomer, testified that she worked at nights and was asleep when she was awakened by "rather a loud knock, more of a pound than anything else” on her door.; that she turned over and went back to sleep and in a few moments heard another knock or pound, got up to see who was there and found defendant Vaughan at her door. Defendant offered the witness some literature, which was refused. The witness said she was sleepy and tired and did not want to be disturbed. Defendant Vaughan "kept talking and I closed the door in her face. ’ ’ The witness no more than got back in bed than she heard pounding on the doors in the next room, and about that time "began to get mad right” and later complained to .the manager. She also heard, just after this incident, loud talking outside of her room but could not tell who did it except that the man across from her said, "Get out of here and stay out. ’ ’
 

 Guy Powell, another lodger, testified that he worked nights, that he was in bed at 9 -.35 a. m., that there was a knock at his
 
 *Supp. 848
 
 door, he got up and went to the door and there found defendant Vaughan. She spoke about her religious views, came in and put some literature on his dresser. He told her he had been working all night and had been sleeping and was tired and had no time to talk to her. “She made a statement about I was in the bed and the bed was afire and I was the kind of man who didn’t know it was on fire and she wanted to wake me up.” She kept on standing in the doorway and would not leave until the witness made several requests. All this disturbed his peace and quiet, he said.
 

 Charles Kramer was in bed when he was disturbed by talking outside, heard the manager ask someone to leave, and went out to see what it was. He found the manager telling the defendants to leave and defendant Vaughan said, “No, the Lord had sent her there and she was going to see the people. ’ ’ The witness Roberts saw defendant Scheerer knock at a door at the opposite end of the hall from that where the witness was, but did not hear him. The witness Bengoshea was awakened by loud talking during the time the defendants were in the hotel but did not know who was talking.
 

 The hotel manager, Mrs. Reynolds, testified that on the occasion in question she saw and conversed with defendants on the second floor and that by that time there was quite a commotion on the third floor—apparently among the guests. We have already stated the substance of her conversation with defendants. The manager also testified that defendant Vaughan had come there twice before, the last time being about six weeks before the incident involved in the charge, and had then engaged in the same process of knocking on doors. The manager then told her she must not do this, that they had a rule requiring all visitors to come to the office and ask for persons they wanted to see, that they had sleepers and she must not wake people, but defendant insisted that the Lord sent her there and she had a right to knock at the doors without the manager’s consent and would do so. The hotel clerk, Aiken, also testified regarding this conversation and said that in it defendant Vaughan was told that many of the guests were day sleepers who worked at night, and “we wanted her to leave and stop disturbing them. ’ ’
 

 The defendant Scheerer was not present at the previous conversations between the manager and defendant Vaughan. He testified, however, that when, he went with her to the hotel he knew she had been there before and had been requested to
 
 *Supp. 849
 
 stay out of there, and that he went with her at her request-It is apparent from the record that they were acting in concert in the matter of their visitation of the hotel, and each is criminally responsible for the acts of the other in that behalf.
 

 The defendants gave testimony which conflicts with the evidence above recited in some respects, but of course we cannot review the credibility of the witnesses on appeal and must accept as true the evidence which tends most strongly to support the verdict.
 

 The defendants contend that the evidence is insufficient to support the verdict of conviction and that the court erred in refusing certain instructions requested by them; also, that the statute under which they were charged is—at least as applied to their activities above mentioned—unconstitutional and void.
 

 The statute in question, section 415, Penal Code, so far as it is involved here, reads as follows: “Every person who maliciously and willfully disturbs the peace or quiet of any neighborhood or person, by loud or unusual noise, or by tumultuous or offensive conduct, ... is guilty of a misdemeanor. ...”
 

 Defendants contend that a disturbance of the peace is not punishable under this part of the section unless it is a disturbance of the
 
 public
 
 peace, citing in support of this claim
 
 People
 
 v.
 
 Anderson
 
 (1931), 117 Cal.App.Supp. 763, 767 [1 P.2d 64], decided by this court. Section 416 of the Penal Code, which was under consideration there, relates to “disturbing the public peace” and the quoted words were held to be the equivalent of “breach of the peace,” which imports a disturbance of public peace or tranquility. In referring to the disturbance of the peace during our discussion we omitted the word “public,” but in view of the words of the statutory provision we were construing, which had already been quoted, no significance should be given to this omission. While a reference was made to .section 415 and it was said to add little to the phrase appearing in section 416, that statement was made with reference to the facts of that case, where the disturbance was undoubtedly public, and is not a decision that a disturbance of the peace, in order to violate section 415, must extend to the public peace. The language of section 415 is to the contrary, for the word “public” does not appear in it, although its use in section 416 indicates that the Legislature was acquainted with it and used it where the legislative intent
 
 *Supp. 850
 
 so required. The part of section 415 above quoted prohibits a disturbance, by the specified means, of the peace of "any neighborhood or person, ’ ’ and we see no reason for reading into it any limitation not stated. There are some decisions by the lower New York courts which, on a statute no more explicit than ours on this point, hold that the disturbance must be public, but we are not disposed to follow them.
 

 Defendants also contend that in order to violate section 415 the disturbance must occur in a public place, .that the interior of the hotel where the acts proved were done by them is not of that character and that therefore their requested instruction No. 5 to that effect should have been given, and their guilt was not shown. Apparently this contention is a sort of corollary of the preceding one, the theory being that the public peace cannot be disturbed unless the disturbance occurs in a public place. Having rejected the foundation of this argument, we need not pass upon the reasonableness of such a conclusion from it, but again point out that section 415 contains no such limitation of its scope.
 

 The testimony is sufficient to support the jury's finding that there was a disturbance of the peace. Perhaps the hotel could be regarded as a neighborhood, but whether this be so or not, the peace of several persons there was disturbed. Two of them, who were night workers, were awakened from their sleep by defendant Vaughan knocking at their doors and when they stated the situation and their desire to sleep she would not go away, but kept on talking to them until one shut the door in her face and the other made several requests that she leave. One of these witnesses testified' that the knock was loud. Another witness testified to loud pounding on the doors in the hotel going on for a period of ten minutes, which he could hear through his closed door, and the other evidence reveals defendants as the pounders. The group of card players were disturbed, not only by the pounding on their own and other doors, but by the uninvited intrusion of defendant Seheerer into their room. While the disturbances shown were not of the violent nature which would be classed as tumultuous conduct, there were acts which could reasonably be classed as offensive conduct (see
 
 People
 
 v.
 
 Beifuss
 
 (1937), 22 Cal.App. 2dSupp. 755 [67 P.2d 411]), that is, the indiscriminate knocking on doors, the intrusion of defendant Seheerer into a private room and the persistence of defendant Vaughan
 
 *Supp. 851
 
 in talking to persons who said they desired to sleep and asked her to leave. • It was also shown that the disturbance was caused by loud’ noises, and while perhaps ordinary knocking at a hotel room door might not be considered unusual, a persistent course of loud knocking at all the rooms in succession, extending over a-period of ten minutes, could well be so regarded by the jury;
 

 Defendants argue that the loud talking shown by the evidence was done, at least in part, by the manager and the clerk and they are not responsible for it. Perhaps this is a result of. defendants’ conduct that they ought reasonably to have anticipated, but we need not so hold, for their previous acts are sufficient to support the verdict.
 

 There is a sufficient showing that the disturbances were wilful and malicious to satisfy the requirement of section 415 that they be so done. Both of these terms are defined by section 7 of the Penal Code. The stronger word is “maliciously,” which imports “a wish to vex, annoy, or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law.” A presumption of law applicable here" is declared by section 1963, subdivision 3, Code of Civil Procedure, “That a person intends the ordinary consequences of his voluntary act.” Here the defendant Vaughan ■ had been previously informed that many of the guests of the hotel were day sleepers and must not be awakened, that she must not knock on the doors or go to them, but the rule of the' hotel was that those desiring to see guests must come to the desk and ask for them. Similar statements, though not in so much detail, were made to both defendants on the Sunday in question. But relying on what they regarded as their legal rights, they insisted on going ahead and knocking on all doors loudly. The ordinary consequences of this would be to awaken the sleepers of whose presence they had been informed, to disturb their peace, and to vex and annoy them. This is sufficient, under the above cited statutory provisions, to enable the jury to infer wilfulness and malice.
 

 Defendants contend that they have a constitutional right to go into the halls of such a hotel as is here involved and knock on the doors of the rooms for the purpose of preaching the gospel and distributing religious literature to the tenants ■ and that the operator of such hotel cannot lawfully exclude them. We doubt whether this claimed right is de
 
 *Supp. 852
 
 terminative of the ease, for even if defendants’ presence in the hotel was a proper exercise of such right, we are aware of no decision that freedom of speech, press and religion carries with it a freedom to distort) the peace of others in the manner shown here. We find no such holding in
 
 Cantwell
 
 v.
 
 Connecticut
 
 (1940), 310 U.S. 296 [60 S.Ct. 900, 84 L.Ed. 1213, 128 A.L.R. 1352], or in
 
 Martin
 
 v.
 
 Struthers
 
 (1943), 319 U.S. 141 [63 S.Ct. 862, 882, 87 L.Ed. 1313], on which defendants rely.
 

 ■ But if the right of defendants to enter within the hotel is material, we think they did not have such right, in face of the hotel managemént’s order excluding them. The Fourteenth Amendment, on which the defendants base their claims, applies only to action by or under color of the authority of the state; it does not run against the action of private individuals, whether hotel proprietors or others, not purporting to be an exercise of the power of the state.
 
 (Iowa-Des Moines Nat. Bank
 
 v.
 
 Bennett
 
 (1931), 284 U.S. 239, 245 [52 S.Ct. 133, 76 L.Ed. 265, 272];
 
 Swank
 
 v.
 
 Patterson
 
 (1943),139 F.2d 145, 146;
 
 Title Guarantee & Trust Co.
 
 v.
 
 Garrott
 
 (1919), 42 Cal.App. 152, 154 [183 P. 470].) From the evidence the place in question appears to be an ordinary hotel, or at least a lodging house. .Its character in this respect is not necessarily altered by the fact that many or the majority of its guests are not transients and that some of them occupy their rooms on a monthly basis.
 
 (Fox
 
 v.
 
 Windent ere Hotel Apart. Co.
 
 (1916), 30 Cal.App..162 [157 P. 820];
 
 Magee
 
 v.
 
 Pacific Improvement Co.
 
 (1893), 98 Cal. 678, 681 [83 P. 772, 35 Am.St.Rep. 199].) The guests of such a place are not tenants and have no interest in the realty; they are mere licensees and the control of the rooms, halls and lobbies remains in the proprietor.
 
 (Fox
 
 v.
 
 Windemere Hotel Apart. Co., supra; Roberts
 
 v.
 
 Casey
 
 (1939), 36 Cal.App.2dSupp. 767, 771 [93 P.2d 654]
 
 ;Edwards
 
 v.
 
 City of Los Angeles
 
 (1941), 48 Cal.App.2d 62, 67 [119 P.2d 370].) Since the proprietor, rather than the guests, has the control of the place and its lobbies and halls, he may exclude persons such as defendants therefrom, or make rules regarding their admission. In
 
 Goldstein
 
 v.
 
 Healy
 
 (1921), 187 Cal. 206 [201P. 462], it is held that the guests of a hotel may invite others to visit them, as of right, and that such invitees are lawfully in the hotel and entitled to the exercise of due care for their safety by the innkeeper;.but there the court also held this right of
 

 
 *Supp. 853
 
 the guest to be subject to reasonable regulation by the management. Here there was such a regulation, which the defendants violated; moreover, they had not been invited by any guest to enter and hence this rule is not applicable to the case. In support of their argument on this matter defendants rely mainly on
 
 Commonwealth
 
 v.
 
 Richardson
 
 (1943), 313 Mass. 632 [48 N.E.2d 678], and
 
 Martin
 
 v.
 
 Btruthers, supra,
 
 (1943), 319 U.S. 141, [63 S.Ct. 862, 882, 87 L.Ed. 1313]. In the Massachusetts case a statute referring to the person having “lawful control” of premises was involved and the court held that by reason of the construction and arrangement' of the lobbies and halls of the apartment house there in question the tenants had control thereof and the landlord did not. The place in question here had no housekeeping facilities for its guests; as far as appears they occupied single rooms, not suites or apartments; there were no means by which they could control entrance to the lobby or halls and it was clearly not an apartment house. The Massachusetts ease is not applicable to it.
 
 Martin
 
 v.
 
 Btruthers
 
 dealt with governmental action and is not applicable to the conduct of hotel keepers, but it recognizes the right of those in control of private property. to exclude therefrom persons on errands like that of defendants.
 

 Defendants attack this statute on the ground that it is fatally uncertain and sets up no ascertainable standard of guilt. We think it is not vulnerable to this attack.
 
 (People
 
 v.
 
 Beifuss, supra,
 
 (1937), 22 Cal.App.2dSupp. 755, 758 [67 P.2d 411];
 
 People
 
 v.
 
 Smith
 
 (1939), 36 Cal.App.2dSupp. 748, 752 [92 P.2d 1039];
 
 Smulson
 
 v.
 
 Board of Dental Examiners
 
 (1941), 47 Cal.App.2d 584, 587 [118 P.2d 483].)
 

 Defendants’ further attack on the statute is not against its terms in general but on the ground that its enforcement against them infringes on the rights guaranteed them by the Fourteenth Amendment. We have already sufficiently discussed this matter. We aré satisfied that the guarantee of freedom of speech, press and religion does not entitle any person to go into a hotel or lodging house, over the objection of the proprietors, and there disturb the peace of thé guests, in the manner shown by this record.
 

 The judgment and order appealed from are affirmed.
 

 Fox, J., and Kincaid, J. pro tern., concurred.