**AMERICAN SAMOA GOVERNMENT, Plaintiff,**

**v.**

**MICHAEL AGASIVA, Defendant.**

High Court of American Samoa
Trial Division

CR No 50-99

November 15, 1999

Before RICHMOND, Associate Justice, ATIULAGI, Associate Judge, and SAGAPOLUTELE, Associate Judge

Counsel: For Plaintiff, John W. Cassell, Assistant Attorney General
For Defendant, Patricia Penn, Assistant Public Defender

ORDER DENYING MOTIONS TO DISMISS
COUNT AND SUPPRESS EVIDENCE

Plaintiff American Samoa Government ("ASG") accuses defendant Michael Agasiva ("Agasiva") of committing the offenses of disturbing public peace, resisting arrest, and possession of an unlicensed firearm in this action. On October 1, 1999, Agasiva filed three separate motions to: dismiss the charge of public peace disturbance; suppress physical evidence; and suppress statements. The motions were heard on October 10, 1999, with both counsel and Agasiva present. After considering and weighing the evidence and arguments, the court denies all three motions.

## Facts

At approximately 2:10 a.m. on July 11, 1999, Special Agent David Snow ("Snow") and police officer Faimasasa Malaefono ("Malaefono") responded to a call reporting an indecent exposure at the Krystal Burger restaurant in Nuu'uli. After being directed to Agasiva by some customers, Snow observed that Agasiva's pants were unbuttoned and unzipped. Snow repeatedly ordered Agasiva to zip his pants before Agasiva complied, and then only after he loudly challenged Snow's authority. Snow told Agasiva to lower his voice as he was likely disturbing other customers and the staff at the restaurant, but Agasiva only became louder and more belligerent, shouting at one point for his food order. Snow requested Agasiva to be quiet numerous times to no avail and became concerned about the safety of others present,

particularly the identified informant who called the police. Then Snow and Malaefono arrested Agasiva for disturbing the peace and to prevent further disturbance. Agasiva physically resisted arrest, and the officers took him down to the ground to subdue and handcuff him.

Agasiva asked about his kingcab pickup. The keys were inside. Snow told Malaefono to take the pickup to the police Substation West. He then drove Agasiva to this substation in the police unit, and Malaefono drove the impounded pickup to the same location. Upon arriving at the station, Malaefono noticed that his flashlight was missing. He reached around the floor of the cab and touched what he thought was the stock of a rifle. Malaefono reported his finding to the watch commander, who instructed him to retrieve this item, which turned out to be a 30.06 caliber, bolt-action rifle, an illegal firearm.

Upon examining the rifle, Malaefono found a live round in the chamber and three more in the magazine. Concerned about the possible presence of other firearms and ammunition, Malaefono further searched the pickup. He found six more bullets for the rifle in the console. When Snow saw the rifle, he added the weapon possession charge and prepared to question Agasiva. However, Agasiva refused to sign the form advising him of his *Miranda* rights regarding interrogation, and Snow did not attempt to question Agasiva about the incident then or at any other time before or after the arrest.

Early the next morning, Snow conducted an inventory search of Agasiva's pickup, pursuant to police policy. Under this policy, an inventory search is done in the vehicle owner's presence. However, Agasiva refused to witness the search, and the search was then made in the watch commander's and shift sergeant's presence. The search yielded one more live round for the rifle in the glove compartment, four ejected shell casings, another live round in the console, and 33 .22 caliber bullets and a spent casing in the cup holder.

## Discussion

### A. Dismissal on Grounds of Unconstitutional Vagueness and Overbreadth

We first examine whether the public peace disturbance statute, A.S.C.A. § 46.4501(a) (2), under which Agasiva was arrested passes constitutional muster. Agasiva alleges that the law is vague and overly broad, and is thus facially invalid as violative of the constitutional right of free speech under Article I, Section 1 of the Revised Constitution of American Samoa.

The overbreadth doctrine can invalidate laws that chill the exercise of

free speech. We note that facial invalidation is an extreme remedy, however, one that has been employed by the Supreme Court only sparingly and as a last resort. *Broadrick v. Oklahoma,* 413 U.S. 601, 613, 37 L. Ed. 830, 841 (1973). "Equally important, overbreadth claims, if entertained at all, have been curtailed when invoked against ordinary criminal laws that are sought to be applied to protected conduct." *Id.*

To support an overbreadth claim, Agasiva must show that the instances in which the statute could intrude on free speech are not outweighed by the valid application of the statute. *Chicago v. Morales,* 527 U.S. 41, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999). He has not met this burden. First, "even protected speech is not equally permissible in all places and at all times." *Cornelius v. NAACP Legal Defense & Educational Fund, Inc.,* 473 U.S. 788, 799, 87 L. Ed. 2d 567, 578 (1985). More specifically, the Supreme Court has said that government "has a substantial interest in protecting its citizens from unwelcome noise." *Ward v. Rock Against Racism,* 491 U.S. 781, 798, 105 L. Ed. 2d 661, 678 (1989).

Although the statute in question runs the risk of chilling speech, the requirement of "intent to cause public annoyance or alarm, or recklessly creating a risk of it,' as an element of the offense, saves the statute from facial invalidation. Similar to the narrow tailoring of the statute in *Grayned v. City of Rockford,* 408 U.S. 104, 33 L. Ed. 2d 222 (1972), this requirement of proof tailors this statute to protect the compelling interest in providing others with peace and quiet. The statute punishes only conduct that is likely to disturb other persons, and of itself is completely content-neutral. Thus, its legitimate application far exceeds any chance of chilling speech.

■ Furthermore, we hold that the statute does not apply to protest actions, the intent of which is to express a viewpoint rather than to "cause public inconvenience, annoyance, or alarm." In so judicially limiting the application of the statute to non-protected speech, we cure any residual overbreadth problems. *See Eroadrick,* 413 U.S. at 613, 37 L. Ed. at 841.

Moving on to vagueness, a statute is unconstitutionally vague if "its prohibitions are not clearly defined." *Grayned,* 408 U.S. at 108, 33 L. Ed. 2d at 227. More specifically, if a person of reasonable intelligence cannot determine from the statute what is prohibited, so that he can conform his conduct accordingly, it is impermissibly vague. In addition, the statute must provide explicit standards in order to prevent arbitrary and discriminatory enforcement. *Id* at 108-109, 227-228.

■ Agasiva argues that the phrase "unreasonable noise" is not an explicit enough description of prohibited conduct, on the basis that the phrase may mean different things to different people. This assertion fails,

however, because "unreasonable noise" is an objective, rather than subjective, standard set by community practices. Mathematical precision is not required in defining levels of noise. As a member of the community, Agasiva should have been aware that shouting in a public restaurant was unreasonable noise for purposes of the statute. *See generally Kovacs v. Cooper,* 336 U.S. 77, 93 L. Ed. 513 (1948)

█ As for explicit standards, application of the statute by law enforcement personnel need not be automatic. Rather, the decision to arrest Agasiva was "made, as it should be, on an individualized basis, given the particular fact situation." *Grayned,* 408 U.S. at 119, 33 L. Ed. 2d at 222. The police were doing their duty, included in the statutory scheme, when they concluded that Agasiva had the requisite intent or recklessness.

Closing this issue, we point out that our resolution of the constitutional issue is supported by a multiplicity of decisions upholding disorderly conduct and disturbance of the peace statutes. *See Kovacs,* 336 U.S. at 79, 93 L. Ed. 2d at 518 (words "loud and raucous" not vague because they convey "to any interested person a sufficiently accurate concept of what is forbidden"); *Heard v. Rizzo,* 281 F. Supp. 720 (E.D. Pa. 1968) *aff'd,* 392 U.S. 646 (1968) (statute prohibiting "loud, boisterous, and unseemly noise" resulting in the "annoyance of peaceable residents" held constitutionally valid); *Eanes v. State,* 569 A.2d 604 (Md. App. 1990) (words "loud and unseemly" in statute not unconstitutionally vague); *People v. Vaughan,* 150 P.2d 964 (Ca. Ct. App. 1944) (statute prohibiting the "malicious and willful disturbance of the peace" by "loud or unusual noise" not unconstitutionally vague). In sum, the portion of the American Samoa public peace disturbance statute at issue is constitutionally valid and does not provide grounds for Agasiva's motion to dismiss.

B. Suppression of Evidence

1. The Arrest Was Lawful

█ Disturbing public peace is a misdemeanor. A.S.C.A. § 46.4501(c). A police officer is authorized to make a warrantless arrest of a person who commits a misdemeanor in his presence, or to prevent a future breach of the peace. A.S.C.A. § 46.0805(4) & (5). Given that the public peace disturbance statute is valid, Snow and Malaefono were statutorily authorized to arrest Agasiva. They were also authorized to arrest Agasiva for the felony of resisting arrest committed in their presence. A.S.C.A. § 46.0805 (1)

114

## 2. The Vehicle Searches Were Lawful

■ Article I, Section 5 of the Revised Constitution of American Samoa being essentially identical in content regarding search and seizure to the Fourth Amendment of the United States Constitution, cases interpreting the Fourth Amendment can provide guidance in determining the legality of the searches of Agasiva's pickup.

The Fourth Amendment does not require that every search be made pursuant to a search warrant. Rather, it prohibits only unreasonable searches and seizures. *South Dakota v. Opperman,* 428 U.S. 364, 372-3, 49 L. Ed. 2d 1000, 1007 (1976). Three well-established exceptions to the warrant requirement justify the searches of Agasiva's pickup as reasonable.

■ Malaefono's seizure of the rifle was justified under a "plain feel" variation of the "plain view" exception allowing warrantless searches. "[T]he plain view doctrine has been applied where a police officer is not searching for evidence against the accused, but nonetheless inadvertently comes across an incriminating object." *Coolidge v. New Hampshire,* 403 U.S. 466, 29 L. Ed. 2d 564, 583 (1971). The present case fits this description. In addition, for the plain view exception to apply, the officer's initial intrusion must be lawful. *Id.* In this case, Malaefono was legally in the impounded pickup, taking it to the substation.

■ Malaefono's discovery and seizure of the rifle were lawful and gave him probable cause to search the rest of the pickup. Although performed without a warrant, the resulting search during which Malaefono found six more bullets in the console was lawful under a modern reading of the "automobile exception." *See United States v. Johns,* 469 U.S. 478, 83 L. Ed. 2d 890 (1985) (lesser expectancy of privacy in vehicle allows search at time of seizure or any time thereafter); *United States v. Spires,* 3 F.3d 1234 (9th Cir. 1993 (probable cause, arising after truck impounded, justifies warrantless search as "there is no requirement of exigent circumstances"); *United States v. McCoy,* 977 F.2d 706 (1st Cir. 1992) (probable cause alone justifies warrantless search of motor vehicle).

■ Finally, Snow's search of the pickup made early the next morning, during which he recovered shell casings and additional rounds, was a valid inventory search. Inventory searches are "now a well-defined exception to the warrant requirement of the Fourth amendment." *Colorado v. Bertine,* 479 U.S. 367, 371, 93 L. Ed 2d 739 (1987). In conducting the search, Snow and the witnessing police officers were operating under standard procedures of ASG's Department of Public Safety. "[R]easonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment . . . ." *Id.* at 374. This court similarly held inventory searches to be valid

exceptions to the search warrant requirement in *Am. Samoa Gov't v. Ve`ave`a,* CR No. 34-98, Order Denying Motion to Suppress (Trial Div. Aug. 8, 1998)

3. Suppression of Statements

Agasiva made no incriminating statements prior to receiving his *Miranda* warning at the station. *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694 (1966). Any declarations directed at the police officers before the arrest were spontaneous and not the result of custodial interrogation. After the arrest, Agasiva made no incriminatory statements either before or after receiving a *Miranda* rights warning.

## Order

For the foregoing reasons, Agasiva's motions to dismiss the charge of disturbing public peace, suppress physical evidence, and suppress statements are denied.

It is so ordered.