[Crim. No. 2107. First Appellate District, Division One.—January 30, 1940.]

In the Matter of the Application of T. A. LA BELLE for a Writ of Habeas Corpus.

Pierce & Sherwin for Petitioner.

Ralph E. Hoyt, District Attorney, J. F. Coakley, Chief Assistant District Attorney, and Folger Emerson, Deputy District Attorney, for Respondent.

KNIGHT, J.—The petitioner, T. A. La Belle, was arrested and imprisoned in the city of Oakland on a criminal complaint charging that at his place of business he displayed a sign on a gasoline dispensing apparatus showing that the total price of the gasoline to be sold therefrom was 18½ cents per gallon, whereas he did sell gasoline therefrom at a total price of 16½ cents per gallon. Claiming that his ar-

rest and imprisonment were illegal and therefore that he was being unlawfully deprived of his liberty, he petitioned for and obtained a writ of *habeas corpus*.

The criminal charge was founded on the first sentence of subdivision (a) of section 11 of the Petroleum Products Fraud Prevention Law of 1931, as amended in 1937 (Stats. 1931, p. 1313; Stats. 1937, p. 1564; Act 2967, Deering's General Laws of 1937); and petitioner's main contention is that the mere act of selling gasoline from an apparatus for less per gallon than the price posted thereon does not constitute a violation of the provisions of said statute. The merit of petitioner's contention depends, therefore, upon the construction that shall be given to the statute. The portion of subdivision (a) of section 11 here involved reads as follows: "No person shall sell, offer for sale, or advertise for sale, any gasoline or other motor vehicle fuel from any place of business in the State of California by use of or through or from any dispensing apparatus, unless there is displayed on such dispensing apparatus in a conspicuous place at least one sign showing the actual total price, including taxes, per gallon of all gasoline or other motor vehicle fuel sold, offered for sale, or advertised for sale from the particular dispensing apparatus from which all such gasoline or other motor vehicle fuel is sold, offered for sale or advertised for sale. . . . ''

Respondent expressly concedes that the Petroleum Products Fraud Prevention Law of 1931, as amended, "is not price-fixing legislation in any sense"; and it would seem that if it were to be construed as price-fixing legislation, serious doubts would arise as to its constitutionality. (*Williams* v. *Standard Oil Co.*, 278 U. S. 235 [49 Sup. Ct. 115, 73 L. Ed. 287, 60 A. L. R. 596].) In other words, respondent specifically admits that the act does not purport to fix the price at which motor vehicle fuel shall be sold; that it does not prohibit price cutting or rebating, nor forbid sales below cost or below the price fixed by the manufacturer; that it does not curtail the right to contract nor require the maintenance of the same price level for any given period of time; that thereunder prices may be raised or lowered at the will of the dealer, and that he is not required to sell to all persons at a uniform price; that he "may charge a different price for each successive sale or he may have different prices based upon the quantity of fuel purchased by the customers or for

any other reason"; nevertheless respondent contends that under the wording of the statute a dealer is guilty of a crime if after having complied with the statutory requirement of posting a price on the dispensing apparatus and while that price remains posted he sells a single gallon of gasoline from that particular apparatus for a fraction of a cent less than the posted price. The interpretation thus contended for by respondent cannot be approved.

Laws are to be construed according to the intention, or at least the apparent or evident intention of the law-making power, which shall be ascertained and determined as far as possible from the statute itself as a whole, including the title, viewed in the light of its scope and apparent object and purpose; and if the statute is susceptible of different constructions, that will be adopted which will make it constitutional and not lead to absurd and disastrous results. Here the title of the act declares that it is "An act to prevent fraud or misrepresentation in the distribution and sale of gasoline or other motor fuel, distillate, kerosene and lubricating oil; regulating the distribution and sale of such products and the use of brands and trade-marks in connection therewith; providing for the licensing of persons, firms, associations or corporations, installing and using motor vehicle fuel pumps; regulating signs, placards, posters, streamers, cards and other advertising media advertising gasoline or other motor vehicle fuel or the price thereof; defining the powers and duties in relation thereto of the Division of Weights and Measures of the Department of Agriculture, and persons authorized by it, sealers of weights and measures, and their deputies and other officers; defining 'gasoline' and prescribing specifications for products sold or offered for sale as 'gasoline'; prescribing penalties for the violation of provisions hereof; and repealing acts and parts of acts inconsistent herewith." And upon analyzing the separate provisions of the body of the act under the rules of statutory construction above mentioned, it becomes apparent that as expressed in the legislative title, the real purpose of the act was to prevent fraudulent sales of petroleum products, and that section 11 was especially designed for the protection of purchasers of gasoline, by requiring retail dealers to display on every gasoline dispensing apparatus used by them a sign showing the brand, grade and price of gasoline sold there-

from, and thus prevent unscrupulous vendors from fraudulently selling a spurious brand or an inferior grade of gasoline at the higher prevailing market price. for which the genuine or superior grade was being sold; but we find nothing in the wording of subdivision (a) of section 11 or elsewhere in the act which would justify the conclusion that as contended by respondent it was the legislative intent to go further and make it a crime to sell the genuine or advertised brand or grade of gasoline for less than the posted price; nor can it be said that the act of doing so contravenes the avowed purpose of the legislation because obviously such a transaction in no manner works a fraud upon the purchaser, but, to the contrary, operates to his financial gain. It was so held by the appellate division of the Superior Court of Los Angeles in disposing of an appeal involving the precise question here presented; and we are in full accord with the majority opinion there rendered. (*People* v. *Paul Mason*, No. 90043, decided August 18, 1939.) In part the court said: ''The title to the act is worded broadly enough to cover the creation of many crimes, as we have stated, but as we are impressed when we read the provisions of the statute, the opening words of its title give the clue to its purpose: 'An act to prevent fraud or misrepresentation in the distribution and sale of gasoline.' Section 1 gives the specifications of gasoline, and section 2 makes it unlawful to sell any product as gasoline that does not conform to the specifications. Section 3 makes it a public offense to sell any gasoline unless there is a sign on the pump from which it is sold, bearing the word 'gasoline' and its brand or trade name or that it is 'gasoline, no brand'. Section 4 interdicts the sale of any petroleum product not gasoline unless its brand or trade name is on the pump, or the words 'no brand'. Section 5 requires the valves of tank wagons to be labeled according to the products that flow through the valves. Section 6 requires that a pump so located as to serve more than one driveway shall have the signs required by sections 3 and 4 clearly visible from each driveway. Section 8 forbids the sale of any gasoline that is falsely represented to be the product of any other than the true producer. Section 9 declares it to be unlawful to place in a pump any gasoline other than that indicated on the pump. Section 10 prohibits the advertisement of any gasoline that is not actually for

sale. The provisions of section 11 not already before us describe with particularity the character of the sign that is to be posted; prohibit the advertisement of any gasoline without giving its price; forbid misleading signs and otherwise insure that the signs may be easily seen and legible. Section 12 forbids the mixing and fraudulent sale of gasoline. By section 13, a tank which has contained any petroleum product must be emptied and relabeled before any different petroleum product kept for sale may be placed in it. Section 14 prohibits the use of a pump to deliver any petroleum product other than that indicated on its sign. We have not attempted, of course, to cover every provision in the statute; much the same safeguards are thrown around the sale of lubricating oil that we have listed concerning gasoline, for example. What we have sketched, however, indicates the scope of this legislation. A clear, positive, uniform purpose pervades the act; it is the protection of the customer. With the possible exception of section 8, which prohibits a dealer from selling another's product as his own brand without the written authority of the producer, we find the consumer the object of the statute's solicitude. Into such a statute the first sentence of section 11 fits without distortion; a sale of gasoline is prohibited unless the protection that the customer needs is afforded, viz., a sign clearly indicating the particular brand or lack of brand and the gross price which will be demanded therefor, that is, 'the actual total price, including taxes' of all the gasoline (then and thereby offered to be) sold from the pump on which the sign hangs. If the sign, giving the customer the protection that the statute desires, is in place, the subsequent sale is valid, even though, by philanthropy of the seller or mutual agreement it differs from the posted price. If the legislature desires to make such philanthropy or mutual agreement unlawful, it can easily be accomplished. We are of the opinion that it has neither been attempted nor accomplished in this statute.''

On the other hand, if the interpretation contended for by respondent were to be adopted, it would doubtless lead to absurd consequences and render this particular part of the statute practically inoperative. For instance, as respondent concedes, the act does not purport to interfere with the right of a dealer to charge a different price for each successive sale or based on the quantity of fuel purchased or for any other

reason; that is to say, he may, if he chooses, lawfully maintain a price of 16 cents a gallon for his employees; 17 cents for outside customers purchasing in quantities of 100 gallons or more a month; and 18 cents for the general public in the ordinary retail sales. But according to respondent's argument, in order to exercise such right, without committing a crime, the dealer must, before making any sale, change or rechange the posted price to conform to the particular sale he is about to make; or else he must install and operate as many dispensing pumps as he has prices. Evidently, according to the letter of the law, he may not post more than one price on one apparatus, because, as will be seen, in framing the mandatory provisions of the statute requiring the display of price signs, the legislature employs the singular—"price", and nowhere uses the plural—"prices". We are not prepared to hold that it was the legislative intent to bring about a situation of the kind above described. Moreover, in order to give any support to the strained interpretation sought by respondent it is necessary, as intimated in *People* v. *Mason, supra,* to read the statute backwards; and as there stated, it does not seem reasonable that the legislature intended in this backhanded way to make the selling of gasoline below the posted price a crime. In this regard, the language quoted in the case of *In re Peppers,* 189 Cal. 682 [209 Pac. 896], from *United States* v. *Reese,* 92 U. S. 214 [23 L. Ed. 563], appears to be especially appropriate. It was there said: "If the legislature undertakes to define a new offense and provide for its punishment, it should express its will in language that need not deceive the common mind: Every man should be able to know with certainty when he is committing a crime. . . . It would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders and leave it to the courts to step inside and see who could be rightfully detained and who should be set at large."

■ The most that can be said in favor of respondent's position is that the language used in the enactment of this particular portion of the statute is ambiguous and consequently its meaning is uncertain; and in such cases, for the purpose of ascertaining the legislative intent, the court under well-settled rules may look beyond the law itself and take into consideration the consequences of a particular construction or interpretation, and if the language used permits, give to the

statute a construction which is in harmony with sound sense and wise policy—one which will make the statute practically operative with the least injury to those upon whom it spends its force so that a statute designed to regulate will not be so construed as to destroy. (23 Cal. Jur., p. 766.)

It is our conclusion, therefore, that if a dealer complies with all statutory requirements relating to the display of signs, he does not commit a criminal offense under the statute in question if he sells gasoline for less per gallon than the price posted on the dispensing apparatus.

The petitioner is discharged.

Peters, P. J., and Ward, J., concurred.