Appellate Department, Superior Court, Los Angeles

[Crim. A. No. 2870.   July 2, 1952.]

THE PEOPLE, Respondent, v. LEE EDMOND KISER, Appellant.

Bailey & Poe for Appellant.

Ray L. Chesebro, City Attorney, Donald M. Redwine, Assistant City Attorney, and Dan E. Whiteside, Deputy City Attorney, for Respondent.

SHAW, P. J.—The defendant was convicted on a charge of violating section 678.5 of the Vehicle Code, and appeals from the judgment. On appeal he contends that he did not violate this section, and further, that it is void for uncertainty.

Section 678.5 was added to the Vehicle Code in 1951, and so far as material here reads as follows: "No person shall operate on any highway any motor vehicle, trailer, or semi-trailer unless equipped with fenders, covers, or devices, including flaps or splash aprons, or unless the body of the vehicle or attachments thereto afford adequate protection to effectively minimize the spray or splash of water or mud to the rear of the vehicle."

This provision is far from being a model of legislative draftsmanship. It has the appearance of stating two alternatives. If this is so, obviously the first one, requiring the vehicle to be "equipped with fenders, covers, or devices, including flaps or splash aprons" is practically meaningless and too uncertain to serve as a definition of a crime. █ But it is the duty of the courts to give to a statute such a construction as will make it valid and operative if such a construction is reasonably possible. (*County of Los Angeles* v. *Legg* (1936), 5 Cal.2d 349, 353 [55 P.2d 206]; *Kipp* v. *Billingham* (1933), 217 Cal. 527, 530 [20 P.2d 318]; *In re La Belle* (1940), 37 Cal.App.2d 32, 38-39 [98 P.2d 778]; *People* v. *Steel* (1939), 35 Cal.App.2d 748, 751 [92 P.2d 815].) █ A statute "cannot be held void for uncertainty if any reasonable and practical construction can be given to its language." (*Lockheed Aircraft Corp.* v. *Superior Court* (1946), 28 Cal.2d 481, 484 [171 P.2d 21, 166 A.L.R. 701]; *Pacific Coast Dairy* v. *Police Court* (1932), 214 Cal. 668, 676 [8 P.2d 140, 80 A.L.R. 1217].) One not impossible mode of doing this would be to import into the pur-

ported first alternative the definitive words of the second alternative. But we need not decide whether this is to be done, for the second alternative is complete in itself and sufficiently certain. It forbids operation of a vehicle of the described class "unless the body of the vehicle or attachments thereto afford adequate protection to effectively minimize the spray or splash of water or mud to the rear of the vehicle."

Defendant points to the words "adequate," "effectively" and "minimize" as introducing fatal uncertainty into the statute, citing *People* v. *Saad* (1951), 105 Cal.App.2d Supp. 851 [234 P.2d 785]. This court there held that "there is no ascertainable standard of guilt in 'practices inimical to the public interest.' " Here the words are quite different. Many definitions of the word "adequate" appear in cases cited in 1 C.J.S. 1462-1463. ■ All of them which could be applied here may be summarized in these: "able; . . . fully competent; fully sufficient." ■ "Effectively" does not appear to have received judicial definition; but it is the adverb of "effective," which means "operative; producing or adapted to produce its proper result." (28 C.J.S. 839.) ■ "Minimize" means "to make as little or as slight as possible" (58 C.J.S. 806.) ■ Taking these meanings of the words criticized, we do not find that this statute "forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application" and hence it is not within the rule of condemnation followed in *People* v. *Saad, supra.* ■ "It is not required that even a penal statute, to be valid, have that degree of exactness which inheres in a mathematical theorem." (*Smulson* v. *Board of Dental Examiners* (1941), 47 Cal.App.2d 584, 587 [118 P.2d 483] ; see, also, *People* v. *Smith* (1939), 36 Cal.App.2d Supp. 748, 752 [92 P.2d 1039].)

Coming to defendant's contention as to the evidence, it appears that the case was submitted to the trial court on an oral stipulation from which the following facts appear. At the time charged the defendant was operating a dump truck on a public highway; the truck did not have attached any fenders, covers or devices, flaps or splash aprons in place or position to cover the rear wheels or in back thereof, but there were two rolled-up flaps attached to the body and slightly to the rear of the rear wheels which were secured in a fixed position in rolls by means of wire; and the truck

body and attachments, including the rolled-up flaps, "afforded no adequate protection to effectively minimize the spray or splash of water or mud to the rear of the vehicle." But the rolled-up flaps, it was further stipulated, could be unsecured and unrolled readily, and if this had been done the truck would have been equipped as required by Vehicle Code, section 678.5. Photographs of the truck introduced in evidence show that to do this it would have been necessary for the driver to dismount from the truck, go around to the rear end of it, untwist wires which held the flaps in a rolled-up position, and unroll the flaps. It was also stipulated that at the time the weather was clear and the highway was dry; and defendants founds his claim that he did not violate the statute on these conditions of the weather and the highway.

His contention, though not so stated, is in effect that since the only purpose of the section appears to be to prevent or reduce the spray or splash of water or mud to the rear of the vehicle, and this can happen only when the highway is wet, the statute must be construed as requiring the described equipment only in that case; and since the highway on which he drove his truck was dry, he did not violate the statute.

But section 678.5 contains no such limitation of or exception to its provisions. Furthermore, section 679 of the Vehicle Code provides that "It is unlawful to operate on any highway any vehicle . . . which is not equipped as required by this code"; and section 615 of the Vehicle Code provides that "It is a misdemeanor for any person to drive or move . . . on any highway any vehicle . . . which does not contain those parts or is not at all times or at those times specifically stated herein equipped with such lamps and other equipment as are required in this division." Section 678.5 is a part of "this division." These provisions do not excuse the presence of required equipment on a vehicle because at some particular time it may not be needed.

Defendant's contention, however, goes farther, and includes the claim that his truck was equipped as required because of the flaps which if unrolled would satisfy the statute. Here is suggested an analogy to brakes, lights and windshield wipers, which, while required to be on a vehicle, are not required to be in operation at all times. But as to all these items on a vehicle, the Vehicle Code, while not requiring them to be always in operation, does require that

they have specified operational capacities—stopping distance, as to brakes, (§ 670); intensity and position, as to lights (§ 648); clear vision, as to windshield wipers (§ 676). We think it could not be said that any of these items complied with the statute if any part necessary to their required capacity of operation was detached and carried in the driver's pocket, or loose in his car, even though it was possible for him to reattach it so that the particular apparatus could function. Here the flaps on defendant's truck, at the time in question, could not do what the statute requires, that is, minimize the spray or splash of water or mud. The truck was, therefore, not equipped as required by section 678.5.

It is true that brakes, lamps, windshield wipers and various other devices placed on vehicles do not operate themselves. They all require some action by the driver of the vehicle to put them into operation, and are not for that mere reason to be held insufficient to comply with the statutory requirements. But we may take notice of the fact that, as motor vehicles are constructed, these various devices all have buttons, handles, levers or other actuating means within the driver's compartment and readily accessible and easily and quickly operated by him. No doubt the legislative requirement of these various devices was made with this fact in mind and is satisfied by it. But here we have a new requirement, for which there cannot be any standard practice to be noticed. No doubt the Legislature knew, as do we, that water and mud are often found on the surfaces of highways when the weather is clear, and that a highway dry at one place may be wet and muddy a short distance ahead, perhaps just around a curve. The requirement that a vehicle be equipped with devices to minimize the spray of water and mud must have been intended to require something like all the safety devices, something which can be put into immediate operation by the driver whenever the necessity arises —not something which will not operate unless he stops his vehicle, gets out and performs a mechanical operation on it to put it in operating condition.

The judgment is affirmed.

Bishop, J., and Stephens, J., concurred.