[Civ. No. 32003. Second Dist., Div. Five. Jan. 24, 1969.]

DEPARTMENT OF AGRICULTURE, Plaintiff and Appellant, v. TIDE OIL COMPANY et al., Defendants and Respondents.

Thomas C. Lynch, Attorney General, Walter S. Rountree, Assistant Attorney General, and Sanford N. Gruskin, Deputy Attorney General, for Plaintiff and Appellant.

Hanna & Morton, Bela G. Lugosi, Alexander, Inman & Fine and Gary Goldman for Defendants and Respondents.

STEPHENS, J.—We are dealing here with four sets of defendants: Tide Oil Company and A. W. Hane; Philsam

Petroleum, Inc., doing business as Jimmy's Service Stations; Harry Kelber; and a group of defendants collectively designated as the "Lippman defendants."

This is a suit for injunctive relief commenced pursuant to section 20982 of the Business and Professions Code. Plaintiff is the Department of Agriculture of the State of California, acting through the Division of Weights and Measures. Defendants are owners and operators of retail motor vehicle fuel service stations at which gasoline is advertised, offered for sale and sold. Plaintiff seeks to enjoin defendants permanently from displaying certain advertising signs, unless said signs comply with the requirements of sections 20880, subdivision (b) and 20880, subdivision (c) of the Business and Professions Code. In addition, plaintiff seeks to enjoin defendant Philsam Petroleum, Inc. permanently from displaying certain price signs on its petroleum dispending apparatus allegedly in violation of section 20826.5 of the Business and Professions Code.

During the period from June 1964 through May 31, 1965, there was posted at the service station of defendants Tide Oil Co. and A. W. Hane, located at 7385 Santa Monica Boulevard, Los Angeles, at least one of the following signs:

 a. "WE GIVE 2¢ A GAL. CASH GAS DISC. COUPON"

 b. "2¢ CASH GAS DISC. COUPON"

 c. "WE GIVE 2¢ A GAL. CASH GAS DISCOUNT COUPON GOOD IN TRADE NOW"

 d. "WE GIVE 2¢ A GAL. CASH DISCOUNT"

That part of the case relating to the Lippman defendants shows that on various occasions prior to the filing of plaintiff's complaint, and at least as of February 1965 and continuing until the issuance of a preliminary injunction on July 21, 1965, the Lippman defendants displayed signs with language to the following effect at the following stations operated by them:

 a. "WE GIVE 2¢ PER GALLON DISCOUNT COUPONS"
 (3016 Century Blvd., Inglewood)

 b. "WE GIVE 2¢ PER GAL. DISCOUNT COUPONS"
 (1401 W. Rosecrans, Gardena; 1014 E. Rosecrans, Compton; 11515 Atlantic Avenue, Lynwood)

 c. "WE GIVE 2¢ COUPONS PER GAL."
 (12131 Long Beach Blvd., Lynwood)

 d. "SAVE 2¢ PER GAL. DISCOUNT COUPONS"
 (11515 Atlantic Avenue, Lynwood)

Upon issuance of a preliminary injunction restraining the

display of the above described signs, the Lippman defendants removed those signs and commenced to display at one or more of their stations signs with words to the following effect: "WE GIVE DOUBLE DISCOUNT COUPONS."

Defendant Philsam Petroleum, Inc., doing business as Jimmy's Service Stations, owns and operates motor vehicle fuel service stations at four locations in the communities of Montclair, Pomona, Fontana and Redlands. It also leases motor vehicle fuel service stations under the name Jimmy's Service Station to various persons at five other locations in the communities of Upland, Ontario, Pomona, Rialto and Riverside, under various agreements which permit defendant Philsam to sell all of the motor vehicle fuel dispensed at such service stations. Under these lease agreements, the form, substance and content of all advertising signs located at said premises are determined and controlled by defendant Philsam.

At various times prior to the time of trial of the within action, defendant Philsam displayed, or permitted to be displayed, at one or more of the Jimmy's Service Stations owned, operated, or controlled by it, signs stating as follows:

 a. "SAVE WITH JIMMY'S"
 b. "FREE MONEY WITH PURCHASE"
 c. "CASH BONUS EVERY DAY"
 d. "CASH DISCOUNT HERE"
 e. "SPECIAL TRUCKERS DEAL ASK US"
 f. "AHORRE AQUI"[1]
 g. "ASK ABOUT OUR '2' PLAN"
 h. "NO LOWER PRICES IN TOWN"

Defendant Philsam was also engaging in the following practice at each of the above mentioned nine Jimmy's Service Stations operated or controlled by it: setting the price-per-gallon indicators on its pumps for premium gasoline at 34.9¢ per gallon, and at the same time maintaining signs on top of its premium pumps which read:

| | |
|---|---|
| "JIMMY'S | |
| PREMIUM | 34.9 |
| CASH DISCOUNT | 2.0 |
| NET PRICE | 32.9 |
| GASOLINE" | |

---

[1]By the Joint Pretrial Statement, the correct translation of the Spanish words "AHORRE AQUI" is "SAVE HERE." By the testimony of a Spanish interpreter, the correct meaning of "AHORRE AQUI" is "I SAVED HERE." This sign was displayed in an area inhabited by a large number of Spanish speaking persons.

It was also engaging in the same practice with respect to its Ethyl and Regular pumps at each of its stations, except for differences in the prices shown in order to reflect the differences in the grades of gasoline sold.

Defendant Philsam controls or determines what signs are posted at the service station operated by defendant Harry Kelber. At various times prior to the filing of plaintiff's complaint, defendant Kelber displayed or permitted to be displayed at his service station a sign reading as follows: "ASK ABOUT OUR '2' PLAN."

The trial court permanently enjoined and restrained defendants Philsam and Kelber from using each of the following advertising signs: "SAVE WITH JIMMY'S"; "FREE MONEY WITH PURCHASE"; "CASH BONUS EVERY DAY"; and "CASH DISCOUNT HERE." The court further adjudged that plaintiff was entitled to no other injunctive relief against defendants Philsam and Kelber, and to no injunctive relief whatsoever against the other defendants. Plaintiff appeals from those portions of the judgment adverse to it.

Before reaching the determinative issues in this case, some preliminary matters need to be dealt with. ■ Defendant A. W. Hane contends that the case is moot as to him since there is no reasonable probability that his past advertising practices will recur. He so testified at the trial.[2] The point is without merit since a permanent injunction may be issued where a guilty party retains the means of continuing his transgressions, even though he testifies that he no longer intends to do so. (*Wood* v. *Peffer*, 55 Cal.App.2d 116, 124 [130 P.2d 220].) Furthermore, as will appear more fully hereinafter, a determination on the merits is necessary to serve as a guide to the Department of Agriculture in its enforcement of those code sections relating to petroleum advertising. Thus, where as in the present case the issues relate to a matter of public interest and there is a likelihood that the matter will arise again in the future, our courts have refused to consider such issues to be moot. (See *Board of Education* v. *Watson*, 63 Cal.2d 829 [48 Cal.Rptr. 481, 409 P.2d 481]; *County of Madera* v. *Gendron*, 59 Cal.2d 798 [31 Cal.Rptr. 302, 382 P.2d 342, 6 AL.R.3d 555]; *Di Giorgio Fruit Corp.* v. *Department of Employment*, 56 Cal.2d 54 [13 Cal.Rptr 663, 362 P.2d 487]; *Terry* v. *Civil Service Com.*, 108 Cal.App.2d 861 [240

---

[2]Defendant also testified: ". . . I intend never to post on the premises of Tide Oil Company or any gasoline business that *I would, say, go into in the future* [these signs] . . . ." (Italics added.)

P.2d 691].) For the same reason, we think that unless there is assurance that all controversy is ended with respect to any of the different types of signs displayed by these defendants, each sign should be construed without regard to whether the issues as to any particular sign have been withdrawn by either party. (See *Sun Oil Co.* v. *Director of Div. on Necessaries of Life,* 340 Mass. 235, 237 [163 N.E.2d 276, 278, 89 A.L.R.2d 896].) Secondly, there is some doubt as to whether Business and Professions Code section 20880, subdivision (b) is in issue since it does not appear that defendants were properly charged with a violation of that section in plaintiff's complaint. Because of the similarity and close relationship this section bears to section 20880, subdivision (c), we think that a determination on the merits as to the applicability of this section is also necessary. The trial court so concluded.

Statutes relating to advertising the price of gasoline appear in Business and Professions Code, division 8, chapter 7, article 5, sections 20820-20827 and article 8, sections 20880-20895. To resolve the crucial issues in this case requires an analysis and interpretation of certain sections of these articles. All defendants are charged with violation of certain provisions in article 8. Only defendant Philsam is charged with violation of the provisions of article 5. Since section 20880, subdivision (a)[3] of article 8 evidences a legislative intent that the different articles were not intended to overlap, they will be separately construed.

Focusing our attention on article 8, section 20880, subdivisions (b) and (c) provide as follows:

"(b) No person shall keeep, maintain or display on or near the premises of any place of business in this State any advertising medium, which indicates or shows or advertises the price of gasoline or other motor vehicle fuel sold, offered for sale or advertised for sale from such premises, unless the actual price per gallon of gasoline or other motor vehicle fuel including taxes is also shown on such advertising medium, together with the word or words 'gasoline' or 'motor fuel' and the trade name or brand of the gasoline or other motor vehicle fuel product advertised for sale by such advertising medium.

"(c) No person offering for sale or selling any gasoline or motor vehicle fuel from any place of business in the State of

---

[3]Section 20880, subdivision (a), in applicable part, provides: "Nothing in this article shall be construed to apply to the price signs referred to in Article 5 of this chapter; . . . ."

California shall post or display a sign or statement or other advertising medium reading, in substance, 'save' a designated amount, or a designated amount per gallon; such as 'save 5 cents' or 'save 5 cents per gallon', or using the expression 'off', a designated amount, such as '5 cents off' or '5 cents less,' or 'discount' of a given amount, such as '5 cents discount', or otherwise using the words 'save', 'off', 'discount', 'less', 'below', or any of them, or a word or words of similar meaning or other phraseology indicating a reduced price, unless there is posted and displayed in letters and numerals of at least equal size and as part of the same sign, statement or other advertising medium, the total price, or prices per gallon, including all taxes from which such reduction will be made, the reduction given and the total net price per gallon, including all taxes, at which gasoline or other motor vehicle fuel is being sold or offered for sale. Words shall be used to explain the reduced price, the amount of reduction, and the price from which the reduction is made. Such words shall be clearly shown in letters at least half the size of the numerals indicating price." Section 20880.5,[4] however, seems to exclude certain advertising practices from the scope of section 20880, subdivisions (b) and (c). It provides: "Nothing in this chapter, nor in this code, is intended to require or requires that the cash or merchandise value of trading stamps be stated or set forth on any sign, statement, or other advertising media which either advertises or offers such stamps, or advertises or indicates the price of gasoline or motor fuel, whether on any dispensing apparatus or elsewhere, and which is displayed at or about any place of business offering for sale or selling gasoline or other motor vehicle fuel." The question presented is whether the advertising practices of these defendants fall within the ambit of section 20880, subdivisions (b) and (c). If they do, are these practices nevertheless excluded from the operation of those sections by virtue of the exemption specified in section 20880.5? Concededly, section 20880.5 has no applicability to the practices of defendants Philsam and Kelber.

With respect to defendant Philsam, there is also the additional question of whether its practice of setting the price-per-gallon indicators on its petroleum dispensing pumps at one

---

[4]We are unable to find any California appellate decisions interpreting the scope of section 20880.5 and its relationship to section 20880, subdivision (c); hence, reference is made to out of state authority dealing with similar statutes.

price while at the same time maintaining signs on top of its pumps indicating a reduced price from that shown on its pump indicators violates section 20826.5 of article 5. That section provides: "No person shall display on any dispensing apparatus from which gasoline or other motor vehicle fuel is being offered for sale or sold, any sign referring to the price of such gasoline or other motor vehicle fuel, which shall include a price indicator used in connection with a computing meter pump or a pump designed to compute price, unless such sign is limited to the actual total price per gallon of all gasoline or other motor vehicle fuel, as prescribed in Sections 20820 and 20826 of this article."

We must first consider whether it is relevant that the advertising practices of these defendants are or are not false, deceptive or misleading. Not surprisingly, the Attorney General contends that such factors are immaterial. Defendants, of course, take the opposite view. Both articles 5[5] and 8[6] contain sections broadly prohibiting false, deceptive or misleading advertising practices. It would seem therefore that such an inquiry would be relevant. However, this only leads us to two additional inquiries. If an advertising practice is found to be misleading even though it does not violate any of the other specific code sections, can such practice nevertheless be enjoined? On the other hand, if an advertising practice violates a specific provision of the code, is this in effect a conclusive legislative determination that such a practice is misleading? We think that both of these questions must be answered

---

[5]Section 20827 of article 5 provides: "It is unlawful for any person, firm, corporation or association, or any employee thereof to make or disseminate or cause to be made or disseminated before the public in this State, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, any statement relative to price, discount or saving of any motor vehicle fuel which comes under the provisions of this article, which is false, deceptive or misleading in any particular and which is known or which by the exercise of reasonable care should be known, to be untrue, false or misleading."

[6]Section 20895 of article 8 provides: "It is unlawful for any person, firm, corporation, or association, or any employee thereof, to make or disseminate or cause to be made or disseminated before the public in this State, from either upon or off the premises of such person, firm, corporation, or association, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, any statement relative to quality, quantity, performance price, discount or saving used in the sale or selling of any commodity which comes under the provisions of this chapter which is, or which could reasonably be construed as being, false, deceptive or misleading in any particular and which is known, or which by the exercise of reasonable care should be known, to be untrue, false, or misleading."

in the affirmative. As to the first question, surely the Legislature did not intend to permit palpably false advertising merely because such advertising was not specifically prohibited. The same must be true as to misleading advertising. Legislation which is designed to protect the public from a perceived evil should be broadly construed in order to effectuate its manifest purpose. As to the second question, to hold otherwise would embroil the courts in a multitude of unnecessary litigation and render nugatory the legislative effort in proscribing certain advertising practices.

The history of legislative regulation of petroleum product advertising in California had its origin in 1931. (Stats. 1931, ch. 609, p. 1313.) The preamble to this act described it as ''An act to prevent fraud or misrepresentation in the distribution and sale of gasoline or other motor fuel, . . .'' In the ensuing years, the Legislature has found it necessary to amend the act numerous times. Consistently, the amendments relating to advertising reflect a legislative awareness that the best method of achieving the stated purpose of the act was to require full and accurate disclosure. Thus, for example, a 1937 amendment to the act required that the actual total price per gallon be disclosed on at least one sign affixed to each gasoline pump, and that advertising signs indicating or showing the price of gasoline also display the actual total price per gallon and the brand name of the gasoline. In their present form, the sections relating to price sign advertising, other than price signs on the gasoline dispensing apparatus (Bus. & Prof. Code, §§ 20820-20827), require price signs to set forth in detail and in lettering as large as other lettering thereon, the total price of the gasoline, including taxes. Section 20880, subdivision (b) is a general prohibition against signs on or near the place of business indicating the price of gasoline without disclosing the actual total price per gallon, including taxes. Section 20880, subdivision (c) is more specific as to advertising a discount or reduced price and prohibits the seller from posting any sign with phraseology indicating such a *reduced* price unless, again, the actual total price per gallon, including taxes, is disclosed on the same sign or advertising medium.

█ Directing our attention to the advertising signs used by defendants Tide Oil Company and A. W. Hane which state ''WE GIVE 2¢ A GAL. CASH DISC. COUPON,'' or variations of similar phraseology, we have concluded that each of said signs falls within the scope of section 20880, subdivisions (b) and (c). Clearly, such signs employ words ''indicating a re-

duced price'' within the meaning of subdivision (c). The language employed, referable as it is to a designated *numerical discount per gallon* in *cash*, admits of such meaning. While a sophisticated buyer may not attribute such meaning to the advertisement, it is within the regulatory ambit of the Legislature to protect the more gullible public.[7] Such signs certainly are indicative of and referable to the price of gasoline as those words are used in subdivision (b). (See *Brody* v. *Save Way Northern Boulevard, Inc.*, 19 App.Div.2d 714 [242 N.Y.S.2d 422], reversed on other grounds, 14 N.Y.2d 576 [248 N.Y.S.2d 873, 198 N.E.2d 254]; *People* v. *25 Stations, Inc.*, 3 N.Y.2d 488 [168 N.Y.S.2d 962, 146 N.E.2d 691].)

The signs of defendants Lippman reading ''WE GIVE 2¢ PER GALLON DISCOUNT COUPONS,'' and others of similar import, are likewise objectionable. In addition, the practices of these defendants in honoring discounts pursuant to these signs are singularly misleading in that they induce a passing motorist to stop, expecting to save 2¢ per gallon of gas purchased. In fact, the evidence adduced at trial showed that a purchaser can save 2¢ per gallon per coupon held but only upon subsequent purchases from the same station. This information is not communicated to the transient motorist who, for example, may merely be passing through the particular city. He will save nothing by buying at the particular station so advertising, but may nevertheless be induced to stop by the misleading promise of immediate savings. The sign ''WE GIVE DOUBLE DISCOUNT COUPONS'' is also objectionable not only for the same reasons as those stated above, but also because, standing alone, such a sign is meaningless. The Legislature sought to achieve full disclosure for the public. This sign is calculated to prevent disclosing anything, in the hope that the more curious members of our motoring public will thereby be induced to stop and trade in order to learn what the signs have reference to.

Whether or not the public can realize a saving by doing

[7]See *Donaldson* v. *Read Magazine* (1947) 333 U.S. 178, 188-189 [92 L.Ed. 628, 640, 68 S.Ct. 591], where the court stated: ''Advertisements as a whole may be completely misleading although every sentence separately considered is literally true. This may be because things are omitted that should be said, or because advertisements are composed or purposely printed in such way as to mislead. [Citations.] That exceptionally acute and sophisticated readers might have been able by penetrating analysis to have deciphered the true nature . . . is not sufficient to bar findings of fraud by a fact-finding tribunal. Questions of fraud may be determined in the light of the effect advertisements would most probably produce on ordinary minds. [Citations.]''

business at service stations engaging in such advertising practices is immaterial. The legislation is designed to prevent abusive practices from occurring, and not merely to punish on an ad hoc basis those who have already succeeded in cheating the public. Such legislation is founded on the notion that the maintenance of such signs could become a "medium of fraud." (*People* v. *Arlen Service Stations,* 284 N.Y. 340 [31 N.E.2d 184].) In sustaining the constitutionality of this legislation[8] as applied to a sign stating "Serve Yourself and Save," our Supreme Court in *Serve Yourself Gas etc. Assn.* v. *Brock,* 39 Cal.2d 813, 819-820 [249 P.2d 545] stated: "While it is generally true that the motorist can realize a saving in the self service type station, and that this sign is therefore literally true, we cannot agree that the application of the requirement of full disclosure of price and brand name will violate due process of law. The convenience to the motoring public in having the price per gallon plainly disclosed where there is a representation that a saving can be made may well have been a real consideration of the Legislature in enacting the statute. The Legislature, in the first instance, is the judge of what is necessary for the public welfare. . . ." The quoted language effectively precludes any further inquiry into the signs of defendants Philsam and Kelber. It is clear that the trial court was correct in its determination that these defendants should be permanently enjoined from using each of the following advertising signs: "SAVE WITH JIMMY'S"; "FREE MONEY WITH PURCHASE"; "CASH BONUS EVERY DAY"; and "CASH DISCOUNT HERE."

From the standpoint of section 20880, subdivision (c) and the *Brock* case, no distinction is reasonably made between the above signs and the one reading "AHORRE AQUI" ["Save Here," or "I Saved Here"] since such sign employs phraseology clearly indicating a reduced price on gasoline. Hence, the trial court erred in failing to enjoin defendant Philsam's continued use of this latter sign. The signs "ASK ABOUT OUR

[8]We note in passing that a number of other courts have upheld requirements that in the posting of signs the price of gasoline be stated. (See *State* v. *Hobson,* 46 Del. 381 [83 A.2d 846]; *State* v. *Woitha,* 227 Iowa 1 [287 N.W. 99, 123 A.L.R. 884]; *People* v. *Arlen Service Stations, supra,* 284 N.Y. 340 [31 N.E.2d 184]; *Merit Oil Co.* v. *Director of Div. of Necessaries of Life,* 319 Mass. 301 [65 N.E.2d 529]; *State* v. *Guyette,* 81 R.I. 281 [102 A.2d 446].) As stated in *Fried* v. *Kervick,* 34 N.J. 68, 76 [167 A.2d 380, 384], the reason for such holdings is that "the mandate represents a proper legislative effort to control the practice of deception and fraud upon the public with respect to the price charged for gasoline."

'2' PLAN" and "NO LOWER PRICES IN TOWN" are also objectionable since they are either indicative of a reduced price or, standing alone, are meaningless.[9] If they are meaningless, they subvert the legislative will that there be a full and accurate disclosure to the motoring public. ■ While technically the sign "SPECIAL TRUCKERS DEAL ASK US" may have some of the objectionable attributes of the other signs previously discussed, it does not appear to us to abound with the abusive possibilities which the Legislature has sought to curtail. Standing alone, the sign is innocuous. It was not the intent of the Legislature to destroy competition, or the right to advertise. Such a sign, designed as it is to attract a restricted group of professional drivers who use large quantities of gas, is a legitimate way of attracting commercial accounts.

■ Defendants Tide Oil and A. W. Hane and defendants Lippman contend that even if their signs would otherwise be construed as violative of section 20880, subdivisions (b) and (c), such signs are nevertheless excluded from or not subject to the provisions of that section by virtue of the provisions of section 20880.5. Section 20880.5 excludes trading stamp advertisements from the disclosure requirements contained in other sections of the code.

Shortly before the enactment of this section, the Attorney General issued an opinion ruling that a sign reading in substance "We Give Trading Stamps" or "Trading Stamps" constituted "phraseology indicating a reduced price" within the meaning of the predecessor to section 20880, subdivision (c). (See 36 Ops. Cal. Atty. Gen. 203 (1960)).[10] In the 1961 session, the Legislature responded by enacting the predecessor to section 20880.5,[11] which had the effect of negating the Attorney General's ruling.

Does the mere addition of the word "COUPON" to a sign otherwise advertising a reduced price per gallon of gasoline

---

[9]Business and Professions Code section 20889 states: "No advertising medium shall be placed on the premises of any place of business in this State in such a manner or in such a position to another advertising medium as will render the advertising medium advertising gasoline or other motor vehicle fuel offered for sale susceptible of being read in conjunction with any other advertising medium, if any person so reading from any public street, or highway may be misled."

[10]The reasoning of the Attorney General's opinion, where deemed persuasive, may be accepted, but to use such opinions as *authority* in the type of action before us would permit the plaintiff to raise his analysis to the status of authority in a prohibitive bootstrap manner.

[11]Section 17781.

exempt such sign from the disclosure requirements of section 20880? We think not. Certainly, from the point of view of impact on the passing motorist, a sign reading "WE GIVE 2¢ PER GALLON DISCOUNT COUPONS" suggests a reduced price on gasoline, just as much as does a sign reading "WE GIVE 2¢ PER GALLON DISCOUNT." Yet the construction urged by defendants and adopted by the trial court permits the former and prohibits the latter. Such construction is unreasonable and is inconsistent with the legislative purpose in requiring a service station operator to make a full and accurate disclosure of the total net price he actually charges for gasoline. To hold otherwise would be to sanction a palpable evasion of the act. (See *People* v. *Al Oil Co.*, 32 Misc.2d 374 [221 N.Y.S.2d 489].) We think section 20880.5 was enacted solely as a legislative response to the Attorney General's ruling that signs which advertised the giving of trading stamps indicated a reduced price on gasoline. Trading stamps, as that commercial concept is ordinarily understood by the public, are token choses having a *de minimis* value per unit. They are usually saved and redeemed at a later date when a sufficient number of such units is accumulated so as to entitle the holder to trade them for a desired commodity of commensurate value. As such, they do not constitute a reduction in price when received in addition to and along with a cash or credit purchase. (See *People* v. *Carillo*, 42 Misc.2d 74 [246 N.Y.S.2d 692].) They do not represent a discount entitling the holder to an immediate saving on the item being purchased. When a service station operator issues trading stamps to a customer, the price at which he sells gasoline does not change, either on his books, or to the customer. As stated by the court in *Sperry & Hutchinson Co.* v. *Margetts*, 25 N.J. Super. 568, 581 [96 A.2d 706, 712] : "From the retail dealer's point of view the stamps diminish by a small fraction the amount he may eventually realize from his cash business, but they do not diminish the price at which gasoline or other products are actually sold. They are not an abatement, nor a rebate, allowance or benefit reducing the price." In affirmance, the Supreme Court of New Jersey commented: "Such use of plaintiff's discount stamps is not within the letter of the statutory interdiction; nor would it be inimical to the reason and spirit of the act. Of this there can be no doubt when the legislative policy and purpose are related to the chosen means of fulfillment." (15 N.J. 203 at p. 206, 104 A.2d 310 at p. 311.) And in *Weco Products Co.* v. *Mid-City etc. Drug Stores*, 55 Cal.App.2d 684, 687 [131 P.2d

856], this court stated: "Consideration of such authorities as are available leads us to the conclusion that the giving of trading stamps as in the instance now before us does not effect a reduction in the price of the article sold such as to constitute a violation of the Fair Trade Act."

In our opinion, it was the principles enunciated in the cited cases which prompted the Legislature to enact section 20880.5.[12] It was not the intent of the Legislature to sanction the advertising practices of these defendants which, as we have stated, clearly indicate a reduced price on gasoline. The traditional trading stamps do not have such an infirmity, nor are they rife with the possibilities of abuse as are the discount coupons in the instant case. Indeed, the Legislature has expressly recognized that there is a real distinction between ordinary trading stamps and the type of coupons given by these defendants.[13] In *Sperry & Hutchinson Co.* v. *McBride*, 307 Mass. 408 [30 N.E.2d 269, 131 A.L.R. 1254], the court made the following comment about the nature of trading stamps: "Trading stamps have been in use long enough so that any purchaser of merchandise, who is interested in acquiring and converting them to his advantage, cannot be said to be likely to be deceived as to their value. As appears from the agreed facts, these stamps represent certain well-defined and easily understood rights that the recipient acquires, and there is no reasonable cause to believe that the dealer who offers them in consideration of cash or approved credit sales will resort to fraudulent practices." (307 Mass. at p. 421, 30 N.E.2d at p. 276.) Regrettably, the same cannot be said to be true of these defendants' coupon practices.

We conclude that since the signs of these defendants, with the exception of the sign reading "SPECIAL TRUCKERS DEAL ASK US" used by defendant Philsam, do not meet the requirements of section 20880, and are not otherwise exempt from the operation of that section, their continued use should have been

[12]It is not without significance that the predecessor to section 20880.5 included the following subsection: "Sec. 2. The addition of this section made by the 1961 Regular Session of the Legislature does not constitute a change in, but is declaratory of, the pre-existing law." (Stats. 1961, ch. 406, p. 1477.)

[13]Section 17752 of the Business and Professions Code provides: " 'Trading stamp' does not include any coupon, caused to be prepared by the merchant using the same and distributed by him to his customers, which coupon, ticket, certificate, card or other similar device is redeemable only by such merchant for or in connection with the purchase of specific articles of merchandise carried in his stock."

permanently enjoined, pursuant to the provisions of section 20982 of the Business and Professions Code.[14]

■ The other facet of this case, as previously alluded to, is the practice of defendant Philsam in setting the price-per-gallon indicators on its gasoline pumps at a certain price while at the same time maintaining signs on top of its pumps indicating two prices: one corresponding to that posted on the price-per-gallon indicator, and the other taking into account a cash discount indicating a total net price less than that shown on the price-per-gallon indicator. Section 20826.5 prohibits the display of any sign referring to the price of gasoline on any dispensing apparatus which has a price indicator used in connection with a computing meter pump, unless such sign is limited to the actual total price per gallon.

Clearly, the pump price signs displayed by defendant Philsam are not limited to the actual total price per gallon, and therefore violate section 20826.5 because each of said signs states two different total prices of gasoline dispensed from the same pump. A service station operator cannot post more than one price on one dispensing apparatus. (*In re La Belle*, 37 Cal.App.2d 32, 38 [98 P.2d 778].) Obviously, a sign containing two different prices is not a sign limited to one actual total price. Furthermore, it is evident that the use of a sign on the top of the dispensing apparatus indicating that a customer will be charged a lesser price than that shown on the price indicator is subject to abuse since the customer must rely on the integrity of the service station attendant to subtract a designated amount per gallon from the price as computed on the pump meter. We conclude that the trial court erred in refusing to permanently enjoin the pump sign practices of defendant Philsam.

In the enforcement of these and other code provisions relating to petroleum advertisements, our courts would do well to bear in mind the following admonition found in *Serve Yourself Gas etc. Assn.* v. *Brock, supra*, 39 Cal.2d 813, 821: "Gaso-

[14]Section 20982 provides: "The department or any sealer may bring an action to enjoin the violation or the threatened violation of any provision of this chapter or of any regulation made pertaining to the provisions of said chapter. Said action may be brought in the county in which such violation occurs or is about to occur. There may be enjoined in one proceeding any number of defendants alleged to be violating the same provisions or regulations, although their properties, interests, residences or places of business may be in several counties and the violations separate and distinct. Any proceeding brought hereunder shall be governed in all other respects by the provisions of Chapter 3, Title 7 of Part 2 of the Code of Civil Procedure."

line is a unique commodity in that few people, if any, can distinguish between grades or brands by the use of the senses. Unlike many other commodities, its sale is final in the sense that there is no practical way for the motorist to return or exchange the purchased commodity, if dissatisfied. Price and brand name are the principal factors in its sale, and therefore, advertising of these elements in a misleading manner is peculiarly subject to abuse. Furthermore, it must be presumed that the Legislature has made a careful investigation in the field, and that it has properly determined that the interests of the public require this regulation. [Citation]."

The case is reversed and remanded with directions to permanently enjoin those practices which we have held to be violative of the pertinent code provisions. We need not decide whether other signs or practices would come within the applicable code sections. It will be time to decide those questions when they arise. (See *Commonwealth* v. *Slome,* 321 Mass. 713 [75 N.E.2d 517, 520].)

Kaus, P. J., and Aiso, J., concurred.